[L. A. No. 28903.   In Bank.   Oct. 30, 1967.]

LEE REICH, Individually and as Administrator, etc., et al., Plaintiffs and Appellants, v. JOSEPH PURCELL, Defendant and Respondent.

552

Irell & Manella, Charles H. Phillips, Richard H. Borow and J. Gordon Hansen for Plaintiffs and Appellants.

John R. Allport for Defendant and Respondent.

TRAYNOR, C. J.—This wrongful death action arose out of a head-on collision of two automobiles in Missouri. One of the automobiles was owned and operated by defendant Joseph Purcell, a resident and domiciliary of California who was on his way to a vacation in Illinois. The other automobile was owned and operated by Mrs. Reich, the wife of plaintiff Lee Reich. The Reichs then resided in Ohio and Mrs. Reich and the Reichs' two children, Jay and Jeffry, were on their way to California, where the Reichs were contemplating settling. Mrs. Reich and Jay were killed in the collision, and Jeffry was injured.

Plaintiffs, Lee Reich and Jeffry Reich, are the heirs of Mrs. Reich and Lee Reich is the heir of Jay Reich. Plaintiffs moved to California and became permanent residents here after the accident. The estates of Mrs. Reich and Jay Reich are being administered in Ohio.

The parties stipulated that judgment be entered in specified amounts for the wrongful death of Jay, for the personal injuries suffered by Jeffry, and for the damages to Mrs. Reich's automobile. For the death of Mrs. Reich they stipulated that judgment be entered for $55,000 or $25,000 depending on the court's ruling on the applicability of the Missouri limitation of damages to a maximum of $25,000. (Vernon's Ann. Mo. Stats. § 537.090.)[1] Neither Ohio nor California limit recovery

---

[1] *Amount of damages recoverable.* ''In every action brought under section 537.080 [action for wrongful death], the jury may give to the surviving party or parties who may be entitled to sue such damages, not exceeding twenty-five thousand dollars, as the jury may deem fair and

in wrongful death actions.[2] The trial court held that the Missouri limitation applied because the accident occurred there and entered judgment accordingly. Plaintiffs appeal.

For many years courts applied the law of the place of the wrong in tort actions regardless of the issues before the court, e.g., whether they involved conduct, survival of actions, applicability of a wrongful death statute, immunity from liability, or other rules determining whether a legal injury has been sustained. (See *Loranger* v. *Nadeau*, 215 Cal. 362, 366 [10 P.2d 63, 84 A.L.R. 1264]; *Ryan* v. *North Alaska Salmon Co.*, 153 Cal. 438, 439 [95 P. 862]; Rest., Conflict of Laws, § 378 et seq.) It was assumed that the law of the place of the wrong created the cause of action and necessarily determined the extent of the liability (*Slater* v. *Mexican Nat. R.R. Co.*, 194 U.S. 120, 126 [48 L.Ed. 900, 902, 24 S.Ct. 581].) Aside from procedural difficulties (see Currie, Selected Essays on Conflict of Laws (1963) pp. 10-18), this theory worked well enough when all the relevant events took place in one jurisdiction, but the action was brought in another. ▮ In a complex situation involving multi-state contacts, however, no single state alone can be deemed to create exclusively governing rights. (*Crider* v. *Zurich Ins. Co.*, 380 U.S. 39, 42 [13 L.Ed.2d 641, 643, 85 S.Ct. 769]; *Clay* v. *Sun Ins. Office, Ltd.*, 377 U.S. 179, 181-182 [12 L.Ed.2d 229, 231, 84 S.Ct. 1197]; *Watson* v. *Employers Liab. Corp.*, 348 U.S. 66, 72-73 [99 L.Ed. 74, 81-82, 75 S.Ct. 166].) The forum must search to find the proper law to apply based upon the interests of the litigants and the involved states. Such complex cases elucidate what the simpler cases obscured, namely, that the forum can only apply its own law. (See *Lein* v. *Parkin*, 49 Cal.2d 397 [318 P.2d 1]; *Grant* v. *McAuliffe*, 41 Cal.2d 859 [264 P.2d 944, 42 A.L.R.2d 1162]; W. W. Cook, The Logical and Legal Basis of Conflict of Laws (1942) pp. 20-21; Cavers, *Two "Local Law" Theories*, 63 Harv. L. Rev. 822-824.) When it purports to do otherwise, it is not enforcing foreign rights but choosing a foreign rule of decision as the appropriate one to apply to the case before it.

---

just for the death and loss thus occasioned, with reference to the necessary injury resulting from such death, and having regard for mitigating or aggravating circumstances attending the wrongful act, neglect or default resulting in such death. . . . ''

[2]Ohio Constitution, article I, section 19a: ''The amount of damages recoverable by civil action in the courts for death caused by wrongful act, neglect or default of another, shall not be limited by law.'' California Code of Civil Procedure, section 377: ''In every action under this section, such damages may be given as under all the circumstances of the case, may be just, . . . ''

Moreover, it has now been demonstrated that a choice of law resulting from a hopeless search for a governing foreign law to create a foreign vested right may defeat the legitimate interests of the litigants and the states involved. (See, generally, Cavers, The Choice of Law Process (1965); Currie, Selected Essays on Conflict of Laws, *supra*; Ehrenzweig, Conflict of Laws (1962).)

Accordingly, when application of the law of the place of the wrong would defeat the interests of the litigants and of the states concerned, we have not applied that law. (*Grant* v. *McAuliffe, supra,* 41 Cal.2d 859, 867; *Emery* v. *Emery,* 45 Cal.2d 421, 428 [289 P.2d 218].) *Grant* was an action for personal injuries arising out of an automobile accident in Arizona between California residents. The driver whose negligence caused the accident died, and the court had to choose between the California rule that allowed an action against the personal representative and the Arizona rule that did not. We held that since ''all of the parties were residents of this state, and the estate of the deceased tortfeasor is being administered in this state, plaintiffs' right to prosecute their causes of action is governed by the laws of this state relating to administration of estates.'' Under these circumstances application of the law of the place of the wrong would not only have defeated California's interest and that of its residents but would have advanced no interest of Arizona or its residents. (*Grant* v. *McAuliffe, supra,* 41 Cal.2d at 867.) In *Emery* members of a California family were injured in Idaho when another member of the family who was driving lost control of the car and it went off the road. The question was whether Idaho or California law determined when one member of a family was immune from tort liability to another. We applied the law of the family domicile rather than the law of the place of the wrong. ''That state has the primary responsibility for establishing and regulating the incidents of the family relationship and it is the only state in which the parties can, by participation in the legislative processes, effect a change in those incidents. Moreover, it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as members of the family cross state boundaries during temporary absences from their home.'' (45 Cal.2d at p. 428.)

Defendant contends, however, that there were compelling reasons in the *Grant* and *Emery* cases for departing from the law of the place of the wrong and that such reasons are not

present in this case. He urges that application of that law promotes uniformity of decisions, prevents forum shopping, and avoids the uncertainties that may result from ad hoc searches for a more appropriate law in this and similar cases.

Ease of determining applicable law and uniformity of rules of decision, however, must be subordinated to the objective of proper choice of law in conflict cases, i.e., to determine the law that most appropriately applies to the issue involved (see Leflar, *Choice—Influencing Considerations In Conflicts Law* (1966) 41 N.Y.U.L.Rev. 267, 279-282). Moreover, as jurisdiction after jurisdiction has departed from the law of the place of the wrong as the controlling law in tort cases, regardless of the issue involved (see *Romero* v. *International Terminal Operating Co.*, 358 U.S. 354, 381-384 [3 L.Ed. 2d 368, 387-389, 79 S.Ct. 468] [Admiralty]; *Wartell* v. *Formusa* (1966) 34 Ill.2d 57 [213 N.E.2d 544]; *W. H. Barber Co.* v. *Hughes* (1945) 223 Ind. 570 [63 N.E.2d 417]; *Wessling* v. *Paris* (Ky.App. 1967) 417 S.W.2d 259; *Clark* v. *Clark* (1966) 107 N.H. 351 [222 A.2d 205]; *Babcock* v. *Jackson*, 12 N.Y.2d 473 [191 N.E.2d 279, 95 A.L.R.2d 1]; *Casey* v. *Manson Constr. & Engineering Co.* (1967) —— Ore. —— [428 P.2d 898]; *Griffith* v. *United Air Lines, Inc.* (1964) 416 Pa. 1 [203 A.2d 796]; *Haumschild* v. *Continental Cas. Co.*, 7 Wis. 2d 130 [95 N.W.2d 814]), that law no longer affords even a semblance of the general application that was once thought to be its great virtue. We conclude that the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this state. *Loranger* v. *Nadeau, supra*, 215 Cal. 362, 366; *Ryan* v. *North Alaska Salmon Co., supra*, 153 Cal. 438, and other cases to the contrary are overruled.

As the forum we must consider all of the foreign and domestic elements and interests involved in this case to determine the rule applicable. Three states are involved. Ohio is where plaintiffs and their decedents resided before the accident and where the decedents' estates are being administered. Missouri is the place of the wrong. California is the place where defendant resides and is the forum. Although plaintiffs now reside in California, their residence and domicile at the time of the accident are the relevant residence and domicile. At the time of the accident the plans to change the family domicile were not definite and fixed, and if the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged. (See Cavers, *op. cit.*,

*supra,* p. 151, fn. 16.) Accordingly, plaintiffs' present domicile in California does not give this state any interest in applying its law, and since California has no limitation of damages, it also has no interest in applying its law on behalf of defendant. As a forum that is therefore disinterested in the only issue in dispute, we must decide whether to adopt the Ohio or the Missouri rule as the rule of decision for this case.

Missouri is concerned with conduct within her borders and as to such conduct she has the predominant interest of the states involved. Limitations of damages for wrongful death, however, have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there. Wrongful death statutes create causes of action in specified beneficiaries and distribute the proceeds to those beneficiaries. The proceeds in the hands of the beneficiaries are not distributed through the decedent's estate and, therefore, are not subject to the claims of the decedent's creditors and consequently do not provide a fund for local creditors. Accordingly, the interest of a state in a wrongful death action insofar as plaintiffs are concerned is in determining the distribution of proceeds to the beneficiaries and that interest extends only to local decedents and beneficiaries. (Currie, *op. cit., supra,* pp. 690, 702.) Missouri's limitation on damages expresses an additional concern for defendants, however, in that it operates to avoid the imposition of excessive financial burdens on them. That concern is also primarily local and we fail to perceive any substantial interest Missouri might have in extending the benefits of its limitation of damages to travelers from states having no similar limitation. Defendant's liability should not be limited when no party to the action is from a state limiting liability and when defendant, therefore, would have secured insurance, if any, without any such limit in mind. A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile and plaintiffs receive no more than they would had they been injured at home. (See Cavers, *op. cit., supra,* pp. 153-157.) Under these circumstances giving effect to Ohio's interests in affording full recovery to injured parties does not conflict with any substantial interest of Missouri. (Cf. *Bernkrant* v. *Fowler,* 55 Cal.2d 588, 595 [12 Cal.Rptr. 266, 360 P.2d 906].) Accordingly, the Missouri limitation does not apply. (Accord: *Gianni* v. *Fort*

*Wayne Air Service, Inc.* (7th Cir. 1965) 342 F.2d 621; *Watts* v. *Pioneer Corn Co.* (7th Cir. 1965) 342 F.2d 617; *Pearson* v. *Northeast Airlines, Inc.* (2d Cir. 1962) 309 F.2d 553, 92 A.L.R.2d 1162; *Fabricius* v. *Horgen* (1965) 257 Iowa 268 [132 N.W.2d 410]; *Farber* v. *Smolack* (N.Y. 1967) 36 U.S.L. Week 2075; *Long* v. *Pan American World Airways, Inc.* (1965) 16 N.Y.2d 337 [213 N.E.2d 796]; *Kilberg* v. *Northeast Airlines, Inc.,* 9 N.Y.2d 34 [172 N.E.2d 526]; *Griffith* v. *United Air Lines, Inc., supra,* 416 Pa. 1.)

The part of the judgment appealed from is reversed with directions to the trial court to enter judgment for the plaintiffs in the amount of $55,000 in accordance with the stipulations of the parties.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

On November 29, 1967, the opinion was modified to read as printed above.