[No. H004032. Sixth Dist. Aug. 31, 1989.]

ALDENE DENHAM et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

John McBride and Wylie, McBride, Jesinger & Sure for Plaintiffs and Appellants.

David N. Poll and Collins & Zapala for Defendant and Respondent.

## OPINION

**ELIA, J.**—Appellants Aldene and Scott Denham filed suit against respondent Farmers Insurance Company (Farmers) alleging a third party bad faith claim under California Insurance Code section 790.03 and a first party bad faith claim pursuant to Nevada law. Farmers' demurrer to the complaint was sustained without leave to amend. We affirm the sustaining of the demurrer as to the third party bad faith claim but reverse with regard to the first party claim.

### FACTS AND PROCEDURAL BACKGROUND

In July 1982, Aldene Denham was seriously injured when her car was struck by a car driven by Jerome Beetow. The accident occurred in Douglas

County, Nevada. The Denhams, residents of California, filed suit against Beetow, a resident of Nevada, in federal district court in Nevada.

Beetow was insured by Farmers under a policy issued in Nevada. Prior to entry of judgment, the Denhams demanded $50,000 from Farmers to settle their claim against Beetow. Farmers refused to settle.

In February 1985, judgment was entered for Aldene Denham for $151,761 with punitive damages of $15,671 and for Scott Denham for loss of consortium in the sum of $5,000. This amount was in excess of the liability limits of the Farmers policy.

In April 1987, appellants executed upon the judgment against Beetow. Appellants' complaint states that "the United States Marshall Service sold, transferred and conveyed" to appellants "all right, title and interest in and to all of the intangible claims for relief owned by Jerome Beetow" against Farmers.

Appellants then filed suit in California asserting both third party and first party bad faith claims against Farmers. Farmers's demurrer to appellants' complaint was sustained without leave to amend. The Denhams appeal.

█ A demurrer tests whether the facts of a complaint are sufficient to state a cause of action against the defendant. (*B & P Development Corp.* v. *City of Saratoga* (1986) 185 Cal.App.3d 949, 952 [230 Cal.Rptr. 192].) In reviewing the sustaining of a demurrer, all material facts pleaded are taken as true. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *B & P Development Corp., supra,* 185 Cal.App.3d at p. 953.) The trial court's ruling will be reversed if, based on the complaint, *any* legal theory can be stated against the defendant or if the defect can be reasonably cured by an amendment. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

DISCUSSION

I. *The Third Party Bad Faith Claim.*

█ The first issue is whether appellants' complaint states a third party bad faith cause of action against Farmers. █ To resolve this issue we must choose between California and Nevada law. For the reasons expressed below, we conclude that Nevada law controls.

■ Choice of law questions in California are determined by the "governmental interest analysis." (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 161 [148 Cal.Rptr. 867, 583 P.2d 721]; *Zimmerman* v. *Allstate Ins. Co.* (1986) 179 Cal.App.3d 840, 844 [224 Cal.Rptr. 917].) This requires that the forum court "search to find the proper law to apply based upon the interests of the litigants and the involved states." (*Reich* v. *Purcell* (1967) 67 Cal.2d 551, 553 [63 Cal.Rptr. 31, 432 P.2d 727].) The first step of the analysis is to examine the laws of the states involved. (*Id.* at p. 553; *Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 161.)

■ California permits third party bad faith claims under certain limited circumstances. In *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], the California Supreme Court held that section 790.03 of the California Insurance Code created a private cause of action against insurers who commit the unfair practices described in that section. More recently, in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], the Supreme Court overruled *Royal Globe* and decided that section 790.03 did not create a private right of action. However, *Moradi* does not apply to actions filed before the date of that opinion if the insured's liability has been conclusively determined. (*Id.* at pp. 292, 306.) Appellants' claim survives *Moradi* because it was filed in 1987 and Beetow's liability was conclusively determined in the federal district court trial. Accordingly, appellants' *Royal Globe* claim states a cause of action under California law.

Nevada, by contrast, does not recognize third party bad faith claims. Although no Nevada cases have considered this precise issue, several federal cases have addressed the question. In *Tweet* v. *Webster* (D.Nev. 1985) 614 F.Supp. 1190, the court concluded: "[W]e do not find any facts or evidence presented by plaintiffs to persuade us that a Nevada court would grant a third party claimant a cause of action directly against an insurer for bad faith refusal to settle a reasonably clear claim, based on statute, implied contract, or common law tort, under Nevada law as it stands today." (*Id.* at p. 1195.) *Tweet* has been approved in *Santacruz* v. *United Pacific Ins. Co.* (D.Nev. 1986) 650 F.Supp. 32, 34 and *Hunt* v. *State Farm Mut. Auto. Ins. Co.* (D.Nev. 1987) 655 F.Supp. 284, 287.

■ As demonstrated above, California permits appellants' third party bad faith claim while Nevada does not. Even though the laws of the two states differ on this issue, a "true conflict" is not necessarily presented. ■ A "true conflict" arises only if both states have an interest in

having their law applied. (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666].) "Only if each of the states involved has a 'legitimate but conflicting interest in applying its own law' will we be confronted with a 'true' conflicts case." (*Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 163, citing *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 319 [128 Cal.Rptr. 215, 546 P.2d 719].)

■ California's interest in permitting *Royal Globe* claims was examined in *Zimmerman* v. *Allstate Ins. Co., supra,* 179 Cal.App.3d at page 845. That court concluded California had an interest in regulating the practices of insurers within California and an interest in affording redress to California residents damaged by unfair insurer practices. (*Id.* at p. 846.) In this case, California's interest in regulating insurers within California is irrelevant because Farmers' refusal to settle occurred in Nevada. "California has no legitimate interest in the possible deterrent effect of its third party cause of action on conduct in [Nevada]." (*Ibid.*) However, appellants are residents of California. California therefore has an interest in protecting them from the unfair practices of insurers.

Nevada's interest in applying its law is twofold. First, Nevada has an interest in regulating insurers within Nevada and in protecting Nevada insureds. This is because Nevada has acknowledged the insurer's duty to act in good faith and deal fairly with its insured. (*United States Fidelity & Guaranty Co.* v. *Peterson* (1975) 91 Nev. 617 [540 P.2d 1070].) However, Nevada has not extended protection against bad faith practices to third party claimants. (*Tweet* v. *Webster, supra,* 614 F.Supp. 1190.) Thus, Nevada also has an interest in protecting its defendant insurers as well as its insureds since Nevada insureds would ultimately bear the cost of extending the insurer's liability to third persons. (See e.g. *Zimmerman* v. *Allstate Ins. Co., supra,* 179 Cal.App.3d at p. 846.)

We conclude that both California and Nevada have an interest in applying their laws. As a result, a "true conflict" is presented. ■ Once a true conflict is identified, the "comparative impairment" approach is used to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state. (*Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d at p. 320.)

■ One factor considered under the comparative impairment approach is whether the policy underlying each state's law "is one that was much more strongly held in the past than it is now . . . ." (Von Mehren & Trautman, The Law of Multistate Problems (1965) p. 377; see also *Offshore*

*Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 165.) In this case, *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d at pages 888-889 was overruled in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287. Thus, California's interest in applying its law is clearly not as strong as it would be had *Royal Globe* not been overruled.

Another factor is that the injury occurred in Nevada. ■ "[A]lthough the law of the place of the wrong is not necessarily the applicable law for all tort actions [citation omitted], the situs of the injury remains a relevant consideration." (*Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 168.) ■ Indeed, California's only link to this case is appellants' California residence. In these circumstances, applying California law would "abrogate the interest of a jurisdiction such as [Nevada] in the application of its law to a situation arising out of an insurance policy written in [Nevada], insuring [a Nevada] resident for an accident that occurred in that state, and where the complained of conduct of the insurer occurred, although its effect was upon a third party residing in California. We are satisfied that [Nevada] has the greater interest in regulating the conduct of the insurer, as well as in protecting the insurer, and through it the insured, against third party bad faith claims." (*Zimmerman* v. *Allstate Ins. Co., supra,* 179 Cal.App.3d at p. 847.)

We conclude that Nevada law controls appellants' third party bad faith claim. ■ Because Nevada does not recognize such claims, appellants' complaint fails to state a cause of action.

II. *The First Party Bad Faith Claim.*

■ The second issue is whether appellants' complaint states a first party bad faith cause of action against Farmers. Specifically, the question is whether a judgment creditor may execute upon a judgment debtor's cause of action against its insurer.

Appellants obtained a judgment against Beetow in federal district court in Nevada. Appellants executed upon the judgment and contend that Beetow's first party claim against Farmers was one of Beetow's assets which appellants obtained pursuant to the execution. Because the judgment was obtained in Nevada federal court, the procedure for executing upon it is governed by Nevada law. (Fed. Rules Civ.Proc., rule 69(a), 28 U.S.C.)

The Nevada statutory scheme regarding execution reveals the following. Nevada Revised Statutes[1] section 21.080[2] states in pertinent part: "All goods, chattels, moneys and other property, real and personal, of the judgment debtor, or any interest therein of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action, shall be liable to execution." Section 10.045, which defines personal property, applies to section 21.080. (§ 10.010.) It states that "personal property" includes "money, goods, chattels, *things in action* and evidences of debt." (§ 10.045, italics added.)

Other provisions of the Nevada execution statutes also suggest that a "thing in action" is subject to execution. Section 21.110 provides that the sheriff shall execute the writ against the judgment debtor's property by levying upon "a sufficient amount of property, if there be sufficient, collecting or selling the *things in action* and selling the other property, . . ." (Italics added.) In addition, section 21.080, subdivision 2 exempts "things in action" held in spendthrift trust. The exclusion of "things in action" in subdivision 2 of section 21.080 suggests that "things in action" are included within subdivision 1. Finally, section 21.090[3] which describes the types of

---

[1] All further statutory references are to the Nevada Revised Statutes unless otherwise noted.

[2] Section 21.080 provides: "1. All goods, chattels, moneys and other property, real and personal, of the judgment debtor, or any interest therein of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action, shall be liable to execution. Subject to the provisions of chapter 104 of NRS, shares and interests in any corporation or company, and debts and credits and other property not capable of manual delivery, may be attached in execution in like manner as upon writs of attachments. Gold dust and bullion shall be returned by the officer as so much money collected, at its current value, without exposing the same to sale. Until a levy, property shall not be affected by the execution.

"2. This chapter does not authorize the seizure of, or other interference with, any money, thing in action, lands or other property held in spendthrift trust for a judgment debtor, or held in such trust for any beneficiary, pursuant to any judgment, order or process of any bankruptcy or other court directed against any such beneficiary or his trustee, where the trust has been created by, or the fund so held in trust has proceeded from, any person other than the judgment debtor or beneficiary himself."

[3] Section 21.090 provides: "1. The following property is exempt from execution, except as otherwise specifically provided in this section: [¶] (a) Private libraries not to exceed $1,500 in value, and all family pictures and keepsakes.

"(b) Necessary household goods, as defined in 16 C.F.R. 444.1(i) as that section existed on January 1, 1987, and yard equipment, not to exceed $3,000 in value, belonging to the judgment debtor to be selected by him.

"(c) Farm trucks, farm stock, farm tools, farm equipment, supplies and seed not to exceed $4,500 in value, belonging to the judgment debtor to be selected by him.

"(d) Professional libraries, office equipment, office supplies and the tools, instruments and materials used to carry on the trade of the judgment debtor for the support of himself and his family not to exceed $4,500 in value.

property exempted from execution, does not include "things in action" within its parameters. Consequently, it appears that section 21.080 may be reasonably interpreted to permit execution upon "things in action."[4]

We next consider whether Beetow's first party claim is a "thing in action." ■ A "thing in action" is a "chose in action" which is a "right of bringing an action or right to recover a debt or money." (Black's Law Dict. (5th ed. 1979) p. 219; 41A Words & Phrases (1965) p. 210; see also Cal. Civ.

---

"(e) The cabin or dwelling of a miner or prospector, his cars, implements and appliances necessary for carrying on any mining operations and his mining claim actually worked by him, not exceeding $4,500 in total value.

"(f) One vehicle if the judgment debtor's equity does not exceed $1,000 or the creditor is paid an amount equal to any excess above that equity.

"(g) For any pay period, 75 percent of the disposable earnings of a judgment debtor during this period, or for each week of the period 30 times the minimum hourly wage prescribed by section 6(a)(1) of the federal Fair Labor Standards Act of 1938 and in effect at the time the earnings are payable, whichever is greater. The exemption provided in this paragraph does not apply in the case of any order of a court of competent jurisdiction for the support of any person, any order of a court of bankruptcy or of any debt due for any state or federal tax. As used in this paragraph, 'disposable earnings' means that part of the earnings of a judgment debtor remaining after the deduction from those earnings of any amounts required by law, to be withheld.

"(h) All fire engines, hooks and ladders, with the carts, trucks and carriages, hose, buckets, implements and apparatus thereunto appertaining, and all furniture and uniforms of any fire company or department organized under the laws of this state.

"(i) All arms, uniforms and accouterments required by law to be kept by any person, and also one gun, to be selected by the debtor.

"(j) All courthouses, jails, public offices and buildings, lots, grounds and personal property, the fixtures, furniture, books, papers and appurtenances belonging and pertaining to the courthouse, jail and public offices belonging to any county of this state, all cemetaries, public squares, parks and places, public buildings, town halls, markets, buildings for the use of fire departments and military organizations, and the lots and grounds thereto belonging and appertaining, owned or held by any town or incorporated city, or dedicated by the town or city to health, ornament or public use, or for the use of any fire or military company organized under the laws of this state and all lots, buildings and other school property owned by a school district and devoted to public school purposes.

"(k) All money, benefits, privileges or immunities accruing or in any manner growing out of any life insurance, if the annual premium paid does not exceed $1,000. If the premium exceeds that amount, a like exemption exists which bears the same proportion to the money, benefits, privileges and immunities so accruing or growing out of the insurance that the $1,000 bears to the whole annual premium paid.

"(l) The homestead as provided for by law.

"(m) The dwelling of the judgment debtor occupied as a home for himself and family, not exceeding $90,000 in value, where the dwelling is situate upon lands not owned by him.

"2. No article or species of property mentioned in this section is exempt from execution issued upon a judgment to recover for its price, or upon a judgment of foreclosure of a mortgage or other lien thereon.

"3. Any exemptions specified in subsection (d) of section 522 of the Bankruptcy Act of 1978 (92 Stat. 2586) do not apply to property owned by a resident of this state unless conferred also by subsection 1, as limited by subsection 2, of this section."

[4] We note that Nevada law clearly permits an assignment of a "chose in action." (§ 12.010; *Castleman* v. *Redford* (1942) 61 Nev. 259 [124 P.2d 293, 294].)

Code, § 953.) ▆▆▆ This is exactly what Beetow possessed. In other words, Beetow had a right to bring a first party bad faith claim against Farmers.

Although we have found no Nevada cases addressing this precise issue, *Chaffee* v. *Smith* (1982) 98 Nev. 222 [645 P.2d 966] and *In re Richards* (Bankr. D. Nev. 1986) 57 Bankr. 662 shed some light on the question. In *Chaffee,* the judgment creditor claimed she acquired the judgment debtor's malpractice action against the debtor's attorney by executing upon the judgment. The court, without discussing the Nevada execution statutes, concluded "[a]s a matter of public policy, we cannot permit enforcement of a legal malpractice action which has been transferred by assignment or by levy and execution sale, but which was never pursued by the original client. [Citation omitted.] The decision as to whether to bring a malpractice action against an attorney is one peculiarly vested in the client. [Citation omitted.] We reserve opinion on the question as to whether previously asserted legal malpractice actions are transferable." (*Chaffee* v. *Smith, supra,* 645 P.2d at p. 966.) The *Chaffee* court cited *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 [133 Cal.Rptr. 83] in support of its decision. *Goodley* held that a chose in action for legal malpractice was not assignable and emphasized the "uniquely personal nature of legal services and the contract out of which a highly personal and confidential attorney-client relationship arises, and public policy considerations based thereon." (*Id.* at p. 395.)

*In re Richards, supra,* 57 Bankr. 662, considered section 21.090 and concluded that "the Nevada Legislature has determined that neither personal injury actions nor recoveries are exempt from execution and levy by judgment creditors." (*Id.* at p. 665.) The court distinguished *Chaffee* by noting that *Chaffee* was limited to its facts and its "public policy" rationale.

Some states permit a judgment creditor to execute upon a judgment debtor's cause of action against its insurer. (See e.g. *Bergen* v. *F/V St. Patrick* (D.Alaska 1988) 686 F.Supp. 786; *Whitehead* v. *Van Leuven* (D. Idaho 1972) 347 F.Supp. 505; *Steffens* v. *American Standard Insurance Co. of Wis.* (Iowa 1970) 181 N.W.2d 174.) In *Bergen* v. *F/V St. Patrick, supra,* 686 F.Supp. 786, the court concluded that a judgment creditor could execute upon the judgment debtor's cause of action against its insurer for bad faith failure to settle. The court based its decision upon the Alaska execution statutes which, like the Nevada statutes, provided for execution upon all " 'property, both real and personal . . .' " and included "things in action" within the definition of "personal property." (*Id.* at p. 787.)

Until 1941, California permitted a judgment creditor to levy execution upon and sell a cause of action in which the judgment debtor was the plaintiff. (*Abatti* v. *Eldridge* (1980) 103 Cal.App.3d 484, 486 [163 Cal.Rptr. 82]; *Everts* v. *Will S. Fawcett Co.* (1937) 24 Cal.App.2d 213, 215-217 [74 P.2d 815]; *Meserve* v. *Superior Court* (1934) 2 Cal.App.2d 468 [38 P.2d 453].) In *Everts* v. *Will S. Fawcett Co., supra,* 24 Cal.App.2d 213, the court considered former California Code of Civil Procedure section 688 which provided that all goods, chattels, money and other property not exempt by law were liable to execution. The court pointed out that the definition of "personal property" within California Code of Civil Procedure section 17 included "things in action." Because a cause of action constituted a "thing in action," the court concluded that the judgment debtor's cause of action was subject to execution. (*Id.* at p. 215.) *Meserve* v. *Superior Court, supra,* Cal.App.2d 468, followed the same statutory analysis as *Everts* and also noted that former California Code of Civil Procedure section 691 directed the officer to levy upon the property and collect and sell the "things in action." (*Id.* at p. 472.)

In 1941, the California Legislature amended Code of Civil Procedure section 688 to prohibit execution upon a cause of action due to the danger that a sale of the action would realize far less than it was worth. (*Abatti* v. *Eldridge, supra,* 103 Cal.App.3d at p. 486; Stats. 1941, ch. 1148, p. 2856.) Today, California Code of Civil Procedure section 699.720 specifically provides that a cause of action is not subject to execution.

We believe that Beetow's cause of action against Farmers was subject to execution under Nevada law. Unlike California, Nevada has not amended its execution statutes to prohibit levy and execution upon causes of action. Instead, Nevada's statutory scheme is strikingly similar to former California law which California courts interpreted to permit execution upon a "thing in action." (*Everts* v. *Will S. Fawcett Co., supra,* 24 Cal.App.2d 213.) Former sections 688, 17, and 691 of the California Code of Civil Procedure are virtually indistinguishable from sections 21.080, 10.045 and 21.110 of Nevada law. As a result, it appears that Nevada permits a judgment creditor to execute upon a judgment debtor's cause of action.

In this case, appellants' complaint alleges that: "pursuant to a Writ of execution issued pursuant to said Judgment the United States Marshall Service sold, transferred and conveyed to plaintiffs all right, title and interest in and to the intangible claims for relief owned by Jerome Beetow against Farmers Insurance Group for breach of the insurance contract and for breach of the covenant of good faith and fair dealing, for violations of Nevada Revised Statute 686(a)."

Having concluded that Nevada law permits execution upon a cause of action, it appears that appellants' complaint contains facts sufficient to state a first party bad faith claim against Farmers. Accordingly, we reverse the trial court's order sustaining respondents' demurrer to the first party bad faith cause of action. However, as we concluded in part I of this opinion, we affirm the trial court's order sustaining the demurrer to the third party bad faith cause of action.

Agliano, P. J., and Cottle, J., concurred.