**Gaurasundari VAN WINKLE and Anne Van Winkle, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, the Hartford Financial Services Group, and Does 1 through 10, Inclusive, Defendants.**

**No. EDCV 03–00622–VAP(SGLx).**

United States District Court, C.D. California.

Oct. 30, 2003.

Allen R. Ball, Brian Yorke, Ball & Yorke, Ventura, CA, for Plaintiffs.

Gregory Michael MacGregor, Deborah A. Berthel, MacGregor & Berthel, Woodland Hills, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFFS LEAVE TO AMEND

PHILLIPS, District Judge.

Defendant Allstate's Motion to Dismiss and Motion to Strike came before the Court for hearing on October 28, 2003. After reviewing and considering all papers filed in support of, and in opposition to, the Motions, as well as the arguments advanced by counsel at the hearing, the Court GRANTS Defendant's Motion to Dismiss and GRANTS Plaintiffs leave to amend.

## I. BACKGROUND

### A. PLAINTIFFS' ALLEGATIONS

On or about June 11, 2000, Mr. Johan Reyes ("Reyes"), of New York, rented a 2000 Ford Explorer from Budget Rent–A–Car ("Budget") located in Los Angeles, California pursuant to a rental agreement. [Complaint ("Compl.") ¶ 17.] Reyes purchased insurance for the vehicle from Budget but did not list Mr. Chia Chang ("Chang"), also of New York, as a driver of that vehicle. [Id.]

On or about June 11, 2000, Chang was driving the vehicle owned by Budget and rented to Reyes. [Id. ¶ 18.] Chang caused a motor vehicle collision with a vehicle owned by Plaintiff Anne Van Winkle and driven by Plaintiff Gaurasundari Van Winkle ("Plaintiffs"), citizens and residents of Nevada. [Id. ¶¶ 9, 18.] The accident occurred in the State of California. [Id. ¶ 15.]

Plaintiffs allege that at the time of the collision Reyes was covered by an automobile liability insurance policy issued by Defendant Hartford Financial Services Group ("Hartford"), a Connecticut corporation with its principal place of business in Connecticut. [Id. ¶¶ 6, 18.] Plaintiffs allege that Chang was covered by an automobile liability insurance policy issued to Chang's parents by Defendant Allstate Insurance Company ("Allstate"), an Illinois corporation with its principal place of business in Illinois. [Id. ¶¶ 5, 18.]

On or about July 27, 2000, Budget denied coverage for the collision because Reyes, who had rented the vehicle from Budget, had not listed Chang as a driver on the rental agreement. [Id. ¶ 19.]

On or about June 1, 2001, Plaintiffs filed suit against Chang and Reyes in the Superior Court of California, County of San Bernardino, case number BCV05682. [Id. ¶ 20.] The Complaint and Statement of Damages was served on Chang and Reyes at their respective residences in the State of New York. [Id.] Neither Chang nor Reyes were provided a defense by their insurers and both Chang and Reyes failed to answer Plaintiffs' Complaint or otherwise appear before the Superior Court. [Id.]

Plaintiffs allege that Defendants Hartford and Allstate were given "reasonable notice" of the lawsuit and had an opportunity to defend the suit prior to entry of judgment. [Id. ¶ 21.]

On or about October 10, 2001, a request for entry of judgment was entered by the California Court against Chang and Reyes. [Id. ¶ 22.] Thereafter, Plaintiffs allege that Allstate and Hartford denied coverage for the collision because Chang was operating the vehicle without the permission of the vehicle's owner, Budget. [Id. ¶ 23.] On or about May 7, 2002, the California Court entered judgment against Chang and Reyes in the amounts of $403,317.66 for Gaurasundari Van Winkle and

$199,710.16 for Anne Van Winkle. [*Id.* ¶ 25.] Plaintiffs allege that the judgment is final but that no part of the judgment has been paid by Defendants Hartford and Allstate. [*Id.* ¶ 26.]

## B. PROCEDURAL HISTORY

On June 3, 2003, Plaintiffs filed a Complaint ("Compl.") in this Court against Defendants Allstate and Hartford, as judgment creditors, under California Insurance Code § 11580. [*Id.* at 1, 6:9–25.] In addition, Plaintiffs seek exemplary and punitive damages under California Civil Code § 3294. [*Id.* ¶ 28.]

On September 18, 2003, Defendant Allstate filed a Motion to Dismiss ("Dismiss Mot.") and a Motion to Strike Portions of Plaintiffs' First Amended Complaint ("Strike Mot."). On October 3, 2003, Plaintiffs filed an Opposition to the Motion to Dismiss ("Dismiss Opp'n") and an Opposition to the Motion to Strike ("Strike Opp'n"). On October 14, 2003, Allstate filed a Reply regarding the Motion to Dismiss ("Dismiss Reply") and a Reply regarding the Motion to Strike ("Strike Reply"). On October 15, 2003, Plaintiffs filed a Surrebuttal on the Motion to Strike and Allstate filed a Reply to the Surrebuttal on October 21, 2003.[1]

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir.2000); *Big Bear Lodging Ass'n v.* *Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir.1999).

The Court must view all allegations in the complaint in the light most favorable to the non-movant and must accept all material allegations—as well as any reasonable inferences to be drawn from them—as true. *See Big Bear Lodging Ass'n*, 182 F.3d at 1101; *American Family Ass'n. Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir.2002). The Court cannot grant the motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. DISCUSSION

### A. CHOICE OF LAW

Plaintiffs' Complaint assumes that California law applies in this case. [Compl.] Defendant Allstate asserts that New York law should be applied and that a conflict exists between the applicable New York and California laws. [Dismiss Mot. at 8:1–7.]

The threshold question is which state's choice of law rules apply. Defendant asserts, and Plaintiffs agree, that California's choice of law rules should be used in determining whether California or New York substantive law applies. [Dismiss Mot. at 4:25–27; Dismiss Opp'n at 2:3–5.] This is a diversity action under 28 U.S.C. § 1332. [Compl. ¶ 12.] "When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir.2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed.

---

1. Local Rule 7–10 states that "[a]bsent prior written order of the Court, the opposing party shall not file a response to the reply." Plaintiffs failed to seek leave of the Court to file their Surrebuttal.

1477 (1941)). Because the case was filed in the Central District of California, the Court looks to California's choice of law rules. *See id.*

### 1. Governmental Interest Analysis

 "Questions of choice of law are determined in California ... by the 'governmental interest analysis.'" *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 583 P.2d 721 (1978). Under this approach, "the forum in a conflicts situation 'must search to find the proper law to apply based upon the interests of the litigants and the involved states.'" *Id.* (quoting *Reich v. Purcell*, 67 Cal.2d 551, 553, 63 Cal.Rptr. 31, 432 P.2d 727 (1967)). "The first step of the analysis is to examine the laws of the states involved." *Denham v. Farmers Ins. Co.*, 213 Cal.App.3d 1061, 1065, 262 Cal.Rptr. 146 (1989).

### 2. Conflicting Laws

 The matter presently before the Court involves two states: California, the forum and site of the underlying automobile collision; and New York, the state of residence of the underlying tortfeasor, the location of his insurance agent, and the state whose law is referenced in the insurance policy. [Appendix to Dismiss Mot. (Policy) *passim.*][2] The fact that two states are involved does not itself indicate that there is a "conflict of laws" or "choice of law" problem. *Hurtado v.Super. Ct.*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666

(1974), *quoted in Offshore*, 22 Cal.3d at 161–62, 148 Cal.Rptr. 867, 583 P.2d 721. "There is obviously no problem where the laws of the two states are identical." *Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. 106, 522 P.2d 666.

Here, the laws of California and New York are not identical. Each state has a "direct action" statute but the contours of the laws differ. Under California law, all policies insuring against losses "resulting from liability for injury suffered by another person" or losses "to property caused by ... any vehicle" will be construed as containing the following provision:

> A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, than an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.

Cal. Ins.Code § 11580.

Under New York law, liability insurance issued in the state must contain the following provision:

> A provision that in case judgment against the insured ... in an action brought to recover damages for injury sustained ... shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or

**2.** The insurance policy at issue was not attached to the Complaint but Defendant included a copy of the policy in an appendix filed in support of its Motions. In a 12(b)(6) motion, a court generally cannot consider material outside the complaint. *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *eCash Techs. Inc. v. Guagliardo*, 127 F.Supp.2d 1069, 1074 (C.D.Cal.2000). A court, however, may consider exhibits submit-

ted with the complaint. *Id.* "Also, a court may consider documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'" *eCash*, 127 F.Supp.2d at 1074 (quoting *Branch*, 14 F.3d at 454). Therefore, it is appropriate for the Court to consider, in this Rule 12(b)(6) motion, the insurance policy at issue in this case even though Plaintiffs did not attach it to the Complaint.

upon the insured, and upon the insurer, then an action may … be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy.

N.Y. Ins. Law § 3420(a)(2).

As Defendant points out, there are at least two important differences between the California law and the New York law. [Dismiss Mot. at 2:22–3:17.] First, under New York law, a litigant must wait thirty days until after notice of entry of judgment is served on the insurer before filing a lawsuit against the insurer for the amount of the judgment. *See* N.Y. Ins. Law § 3420(a)(2). California law does not include such a requirement. *See* Cal. Ins. Code § 11580(b)(2). Second, New York law specifically limits recovery in suits by judgment creditors against insurers to "the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy." N.Y. Ins. Law § 3420(a)(2). The California statute does not expressly limit recovery to the policy coverage limits. *See* Cal. Ins.Code § 11580.

### 3. True Conflict

■■ "Even though the laws of the two states differ on [these] issue[s], a 'true conflict' is not necessarily present." *Denham*, 213 Cal.App.3d at 1065, 262 Cal.Rptr. 146. "A 'true conflict' arises only if both states have an interest in having their law applied." *Id.* at 1065–66, 262 Cal.Rptr. 146 (citing *Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. 106, 522 P.2d 666). "When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied." *Offshore*, 22 Cal.3d at 163, 148 Cal.Rptr. 867, 583 P.2d 721 (internal quotations omitted).

The Court therefore must "examine the governmental policies underlying" the New York and California laws, "preparatory to assessing whether either or both states have an interest in applying their policy to the case." *Id.* (internal quotations omitted). " 'Only if each of the states involved has a legitimate but conflicting interest in applying its own law will [the Court] be confronted with a true conflicts case.' " *Denham*, 213 Cal.App.3d at 1066, 262 Cal.Rptr. 146 (quoting *Offshore*, 22 Cal.3d at 163, 148 Cal.Rptr. 867, 583 P.2d 721; *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 319, 128 Cal.Rptr. 215, 546 P.2d 719 (1976)).

### a. California's Interests

Turning first to the California law, the Court notes that California has an interest in protecting tort victims from judgment-proof tortfeasors and the insurers that fail to defend them. Plaintiffs, however, may not be "member[s] of the class which [California] law seeks to protect." *Offshore*, 22 Cal.3d at 164 n. 5, 148 Cal.Rptr. 867, 583 P.2d 721. Plaintiffs are residents and citizens of the State of Nevada. [Compl. ¶¶ 4, 9.] It is not clear that the policy behind the California Insurance Code is to protect out-of-state visitors against tortfeasors who are insured out-of-state.

The California Supreme Court stated, in a case with slightly different facts, that "California has no interest in extending to Nevada residents greater rights than are afforded them by the state of their domicile." *Howe v. Diversified Builders, Inc.*, 262 Cal.App.2d 741, 745–46, 69 Cal.Rptr. 56 (1968). In *Howe*, the injury occurred in Nevada, the state of the plaintiff's residence and the suit was brought in California, the state of the defendant's residence. *Id.* at 746, 69 Cal.Rptr. 56. The present case is distinguishable in that the injury occurred in California. Despite this dis-

tinction, however, the interests of California are at least reduced when a nonresident seeks the benefits of its laws.

Plaintiffs rely heavily on *Denham* and *Zimmerman*. In both of these cases, however, the Court specifically relied on California's interest in protecting its own residents. *See Denham*, 213 Cal.App.3d at 1066, 262 Cal.Rptr. 146 ("California therefore has an interest in protecting [California residents] from the unfair practices of insurers"); *Zimmerman v. Allstate Ins. Co.*, 179 Cal.App.3d 840, 846, 224 Cal.Rptr. 917 (1986) ("California has demonstrated an interest in ... affording redress to California residents damaged by unfair practices of insurers").

California may still have a reduced interest in providing redress for wrongs occurring in California, even though none of the parties involved are California residents. There is some dispute, however, as to where the wrongful conduct occurred. Plaintiffs contend that the insurer's alleged wrongful conduct was failing to defend Chang in the suit before the California Superior Court. [Dismiss Opp'n at 8.1–12.] As Plaintiffs explain, "California's policy of making insurers responsible for defaults entered against their insureds when a defense is wrongfully denied furthers the California policy of proper determination of litigation by giving insurers a strong incentive to defend their insured, and punishing insurers who wrongfully refuse to do so." [*Id.* at 13:12–18.]

Defendant counters that "because all correspondence between an insurer and its insured is through the address listed on the declarations page of the policy, the conduct of denying a defense (i.e. through a letter) presumably occurred in New York." [Dismiss Reply at 3:3–8.] In essence, Defendants argue that the alleged wrong occurred within the insurer-insured relationship which arose and continued in New York and that Plaintiffs wish to stand

in the judgment debtors' shoes to allege wrongful failure to defend.

The Court agrees that any duties Defendant may have had arose from the insurance policy, issued through an agent in New York to a New York insured. [Appendix to Dismiss Mot. (Policy) at 5.] Therefore, the site of alleged wrongful conduct was New York in large part. Still, it must be noted that the underlying injury resulted from the automobile collision in California. California may have some interest in the adjudication of derivative actions, such as this one, which would not have arisen but for the original injury and the original tort action.

■ Plaintiffs also assert, "California has a strong interest in ensuring that California judgments are properly enforced." [Dismiss Opp'n at 14:1–11.] Plaintiffs rely on Rule 69 of the Federal Rules of Civil Procedure, which provides that the procedure for enforcing a judgment "shall be in accordance with the practice and procedure of the state in which the district court is held." [*Id.*] Defendant asserts that Plaintiffs' argument fails because of *United States v. Miller*, 229 F.2d 839 (3d Cir. 1956), in which the Third Circuit stated that "matters of attachment, execution and the like are to be determined by the law of the forum and not the law of the place where judgment was rendered." [Dismiss Mot. at 9:24–28; Dismiss Reply at 3.22–4:3.] A federal rule that requires that the laws of a forum state be used does not, in itself, demonstrate the expression of a state's interest. Rather, it demonstrates only a federal policy.

Plaintiffs have not pointed to any California statute or case in which the State expresses an interest in the enforcement of its judgments. Therefore, Plaintiffs have presented no evidence of such a California interest. It should be noted, however, that though no express California interest has

been shown, California is both the forum state and the place where judgment was rendered. The Court may infer that, in such a case, California has some interest in the enforcement of a judgment. Still, the Court cannot give great weight to this interest where Plaintiffs have not attributed any expression of the interest to the State itself.

### b. New York's Interests

Turning next to the New York law,[3] New York has expressed an interest in limiting an insurer's liability to "the amount of the applicable limit of coverage under such policy." N.Y. Ins. Law § 3420(a)(2). In other words, New York has an interest in controlling the price of insurance by controlling the remedies to which a carrier is exposed, and thus, the risk assumed. By limiting the potential liability, New York may have intended to reduce insurance premiums [Dismiss Mot. at 3:6–9, 8:1–7.]

Plaintiffs assert that New York's interests regarding actions outside of New York are "simply non-existent." [Strike Mot. at 11:23–24.] The Court disagrees. New York can certainly have an interest in the performance of insurance contracts issued to New York residents that may cover both in-state and out-of-state risks. In fact, the statute applies, by its own terms, to all policies "issued or delivered in this state." N.Y. Ins. Law § 3420. It is not limited to policies covering risks located exclusively in New York.

Plaintiff's counsel asserted at oral argument that there is no evidence that can be considered by the Court supporting any

connection of the policy to the State of New York. As explained above, the Court can consider the policy itself and the policy includes several explicit references to New York. The "Auto Policy Declarations" page shows that the insured resides in New York and that the insurer's agent may be contacted at a New York address. [Appendix to Dismiss Mot. (Policy) at 5.] The insurance coverage refers to the "New York Uninsured Motorists Endorsements." [*Id.* at 6–8.] The proof of insurance card is entitled "New York State Insurance Identification Card" and states that Allstate is an "authorized NEW YORK insurer," that the policy complies with "Article 6 (Motor Vehicle Financial Security Act) of the NEW YORK Vehicle and Traffic Law," and that the policy is issued to a New York resident. [*Id.* at 11.] Finally, the content of the policy contains countless references to New York law. [*Id. passim.*] This is a sufficient basis upon which to conclude that New York has an interest in the insurer-insured relationship between. Allstate and the underlying tortfeasor.

The same interest discussed above, limiting insurers' potential liability, also may be furthered by the thirty-day notice requirement of N.Y. Ins. Law § 3420(a)(2), which can function as an additional hurdle to recovery against an insurer and limit an insurer's total liability. [Dismiss Mot. at 7:27.] Defendant argues that, in New York, fewer judgment creditors will sue, or have standing to sue, a judgment debtor's insurer because each litigant must wait thirty days after notice of entry of judgment before filing suit. Though this may

---

**3.** Plaintiffs assert that "in ruling on a motion to dismiss, this court cannot consider material that is outside the complaint, such as the statements in the defendant's moving papers ... [and] [t]herefore, any claims regarding New York's interest must be disregarded." [Dismiss Opp'n at 9:23–28.] This is a misapplication of the principle of adjudication to

which Plaintiffs refer. The Court "may make [its] own determination of those policies and interest, without taking 'evidence' as such on the matter." *Offshore,* 22 Cal.3d at 163 n. 5, 148 Cal.Rptr. 867, 583 P.2d 721 (citing *Hurtado,* 11 Cal.3d at 581, 114 Cal.Rptr. 106, 522 P.2d 666).

be a theoretical possibility, the Court finds that this provision is not a strong expression of such a state interest.

Defendant also points to the insurers' notice obligations under N.Y. Ins. Law § 3420(d), of which there is no counterpart under California law. [Dismiss Mot. at 10:19–15.] The provision to which Defendant refers, however, sets forth notice procedures for denying coverage "for death or bodily injury arising out of a motor vehicle accident ... *occurring within this state.*" [*Id.* at 10:19–11 15; N.Y. Ins. Law § 3420(d) (emphasis added).] The phrase "this state," within the New York statute, can only be understood to refer to New York. The accident did not occur in New York and Defendant has not explained how this provision applies in this case.

### c. True Conflicts Summary

In sum, California has an interest in protecting tort victims injured in California from judgment-proof tortfeasors and the insurers that fail to defend them, but that interest is somewhat reduced because Plaintiffs are not California citizens and thus are not members of the class California's statute is meant to protect. In addition, California may have some interest, though not expressed by the State itself, in the enforcement of the judgments of its courts. New York has an explicit interest in limiting an insurer's liability to "the amount of the applicable limit of coverage under such policy." N.Y. Ins. Law § 3420(a)(2). The Court finds that each state has a "legitimate interest in the application of its law and policy" and therefore a "true conflict" exists. *Offshore,* 22 Cal.3d at 163, 148 Cal.Rptr. 867, 583 P.2d 721.

### 4. "Comparative Impairment" Analysis

■ "Once a true conflict is identified, the 'comparative impairment' approach is used to determine which state's interest

would be more impaired if its policy were subordinated to the policy of the other state." *Denham,* 213 Cal.App.3d at 1066, 262 Cal.Rptr. 146. The "comparative impairment" analysis "proceeds on the principle that true conflicts should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied." *Offshore,* 22 Cal.3d at 165, 148 Cal.Rptr. 867, 583 P.2d 721 (citing *Bernhard,* 16 Cal.3d at 320, 128 Cal.Rptr. 215, 546 P.2d 719).

The California Supreme Court has explained that "this analysis does not involve the court in 'weighing' the conflicting governmental interests in the sense of determining which conflicting law manifest[s] the 'better' or the 'worthier' social policy on the specific issue." *Id.* (citing Horowitz, *The Law of Choice of Law in California—A Restatement,* 21 UCLA L.Rev. 719, 753 (1974)). "An attempted balancing of conflicting state policies in that sense ... is difficult to justify in the context of a federal system in which, within constitutional limits, states are empowered to mold their policies as they wish." *Id.*

■ "Rather, the resolution of true conflict cases may be described as 'essentially a process of allocating respective spheres of lawmaking influence.'" *Offshore,* 22 Cal.3d at 165, 148 Cal.Rptr. 867, 583 P.2d 721 (citing Baxter, *Choice of Law and the Federal System,* 16 Stan. L.Rev. 1, 11–12 (1963)). Within the "comparative impairment" approach, Courts may consider several factors

- "whether the policy underlying each state's law is one that was much more strongly held in the past than it is now," *Denham,* 213 Cal.App.3d at 1066–67, 262 Cal.Rptr. 146 (internal quotations omitted);
- whether "one of the competing laws is archaic and isolated in the context of the laws of the federal union," such

that it should "yield to the more prevalent and progressive law," *Offshore,* 22 Cal.3d at 165, 148 Cal.Rptr. 867, 583 P.2d 721;

- how best to achieve "the maximum attainment of underlying purpose by all governmental entities," *id.* at 166, 148 Cal.Rptr. 867, 583 P.2d 721;
- whether "the policy underlying a statute [is] comparatively pertinent if the same policy may easily be satisfied by some means other than enforcement of the statute itself," *id.* (internal quotations omitted);
- "the relative commitment of the respective states to the laws involved," as revealed by "the history and current status of the states' laws" and "the function and purpose of those laws," *id.;* and
- "the situs of the injury," *Denham,* 213 Cal.App.3d at 1067, 262 Cal.Rptr. 146 ("[A]lthough the law of the place of the wrong is not necessarily the applicable law for all tort actions, the situs of the injury remains a relevant consideration.")

Applying the factors set forth by California's courts, the Court concludes that New York's interest "would be more impaired if its policy were subordinated to the policy of" California. *Denham,* 213 Cal.App.3d at 1066, 262 Cal.Rptr. 146.

Plaintiffs in the present action seek payment from judgment creditors of the damages in the underlying suit under California Insurance Code § 11580 and exemplary and punitive damages under California Civil Code § 3294. [*Id.* ¶¶ 1, 6:9–25, 28.] In support of their latter claim, Plaintiffs allege:

The conduct, actions, and inactions of Defendant ... was [sic] malicious, oppressive, despicable and intended by the Defendants to cause injury to Plaintiffs and were carried on by the Defendants, and each of them, with a willful and conscious disregard of the rights of Plaintiffs, and/or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, and/or was an intentional misrepresentation, deceit, or concealment of a material fact(s) known to the Defendants, and each of them, with the intention to deprive Plaintiffs of property, legal rights, or otherwise cause injury, such as to constitute malice, oppression, or fraud under *California Civil Code* § 3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish and/or set an example of [D]efendants.

[Compl. ¶ 28.]

Defendant points out that under New York law there is an express rejection of any claim for an amount "exceeding the amount of the applicable limit of coverage under such policy or contract." N.Y. Ins. Law § 3420. The question, then, is whether there is a California interest in allowing third-party plaintiffs to seek an amount exceeding the policy limits.

Plaintiffs brought their main claim under California Insurance Code § 11580 which does not explicitly create a third-party cause of action for any remedy beyond the "terms and limitations" of the policy. Rather, it states that "an action may be brought against the insurer *on the policy.*" Cal. Ins.Code § 11580 (emphasis added).

Plaintiffs argue that a claim for remedies in an amount beyond policy limits exists under California Civil Code § 3294, the general exemplary damages provision. A tortious breach of the implied covenant can support an award of exemplary damages against the insurer if the other requirements of "oppression, fraud, or malice" are met. *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 462–63, 113 Cal. Rptr. 711, 521 P.2d 1103 (1974). There-

fore, though the plain language of California Insurance Code § 11580 seems to limit third-party actions to the "terms and limits" of the underlying policy, California courts have applied the general exemplary damages provision, California Civil Code § 3294, to allow third-party recovery from insurers for such damages. *See, e.g., id.; Mock v. Michigan Millers Mutual Ins. Co.,* 4 Cal.App.4th 306, 327–30, 5 Cal. Rptr.2d 594 (1992), *Fleming v. Safeco Ins. Co.,* 160 Cal.App.3d 31, 43–44, 206 Cal. Rptr. 313 (1984).

The plain language of the two statutes indicates that New York's "relative commitment" to its law prohibiting damages "exceeding the amount of the applicable limit of coverage," N.Y. Ins. Law § 3420, is stronger than California's permissive stance which has evolved through case law. The California legislature has not made as strong a statement on the issue as the New York legislature. Therefore, the fifth factor listed above, "the relative commitment of the respective states to the laws involved," weighs strongly in favor of applying New York law.

Similarly, New York has made a clear statement of its thirty-day notice requirement. California law does not include a similar requirement. Furthermore, there is no legislative statement expressing a clear preference for reduced procedural requirements or encouraging plaintiffs not to give defendant-insurers notice.

The only factor that weighs in favor of applying California law is the sixth factor, the situs of the injury. As discussed above, however, the wrongs alleged to have occurred within the underlying insurer-insured relationship, occurred in New York. Furthermore, even in underlying tort suits, "the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this state." *Howe v. Diversified Builders, Inc.,* 262 Cal.App.2d 741, 745, 69 Cal.Rptr.

56 (1968) (quoting *Reich v. Purcell,* 67 Cal.2d 551, 555, 63 Cal.Rptr. 31, 432 P.2d 727 (1967)). "In a complex situation involving multistate contacts . . . no single state alone can be deemed to create exclusively governing rights." *Reich,* 67 Cal.2d at 553, 63 Cal.Rptr. 31, 432 P.2d 727. "[W]hen application of the law of the place of the wrong would defeat the interests of the litigants and of the states concerned, we have not applied that law." *Id.* at 554, 63 Cal.Rptr. 31, 432 P.2d 727.

The mere fact that the injury in the underlying suit occurred in California is not sufficient to outweigh the strong New York interests explicitly expressed in New York Insurance Law § 3420. In these circumstances, "applying California law would abrogate the interest of a jurisdiction such as [New York] in the application of its law" to a situation arising out of an insurance policy issued to a New York resident by an agent of the insurer located in New York. *See Denham,* 213 Cal.App.3d at 1067, 262 Cal.Rptr. 146. The Court is satisfied that New York has the "greater interest in regulating the conduct of the insurer, as well as protecting the insurer, and through it the insured, against third party bad faith claims." *Id.* The Court concludes that New York law controls Plaintiffs' claims.

Plaintiffs' Complaint only alleges violations of California law. Therefore, the Complaint is dismissed.

## B. LEAVE TO AMEND

■ Plaintiffs seek leave to amend their First Amended Complaint. [Dismiss Opp'n at 16:4–10.] Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Although liberally granted, leave to amend is not automatic. A district court can deny leave "where the amendment would be futile . . . or where

the amended complaint would be subject to dismissal." *Saul v. United States,* 928 F.2d 829, 843 (9th Cir.1991) (citations omitted). *See also Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir.1998). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988).

Defendant argues that amendment would be futile because no claim has been stated upon which relief can be granted. [Dismiss Mot. at 12:1–12.] Specifically, Defendant argues it did not have a duty to defend under the underlying insurance policy because the tortfeasor's actions fall outside of the terms of the policy. [*Id.* at 3–5.] Plaintiffs, however, have not had the opportunity to plead their case in terms of New York law and Defendants have not demonstrated that it would be impossible for Plaintiffs to do so. Plaintiffs, therefore, have leave to amend their Complaint to allege the elements of their claims under the laws of New York.

The Court need not consider Defendant's Motion to Strike. To a large extent, dismissal of the Complaint moots the Motion to Strike. At oral argument, Defendant's counsel urged the Court to strike, or to deny leave to amend as to, Plaintiffs' claims for exemplary and punitive damages because these claims cannot be alleged under New York law. Plaintiffs, however, have not filed a Complaint alleging violations of New York law. To rule on the viability of a claim that has not been set forth by a litigant and that has been discussed before the Court only in hypothetical terms is akin to issuing an advisory opinion. The Court reserves judgment until the issue comes squarely before it.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss and GRANTS Plaintiffs leave to amend. Any amended complaint must be filed no later than November 21, 2003.