# IN THE SUPREME COURT OF CALIFORNIA

HAIRU CHEN et al.,
Plaintiffs and Appellants,

v.

LOS ANGELES TRUCK CENTERS, LLC,
Defendant and Respondent.

S240245

Second Appellate District, Division Eight
B265304

Los Angeles County Superior Court
BC469935

July 22, 2019

Justice Chin authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Kruger, and Groban concurred.

# CHEN v. LOS ANGELES TRUCK CENTERS, LLC

## S240245

### Opinion of the Court by Chin, J.

In this tort action arising out of a fatal tour bus accident in Arizona, the parties initially included plaintiffs from China and defendants from both Indiana and California. Asked to decide which jurisdiction's law applied to the case, the trial court conducted the governmental interest test (see *Reich v. Purcell* (1967) 67 Cal.2d 551 (*Reich*)) and concluded that Indiana law governed. Before trial, however, the plaintiffs accepted a settlement offer from the Indiana manufacturer of the tour bus and dismissed that defendant from the case. We granted review to determine if the trial court should have reconsidered the previous choice of law ruling after that Indiana defendant was no longer a party.

For reasons that follow, we conclude that the trial court was *not* required to reconsider the prior choice of law ruling based on the party's settlement. Because the trial court did not err by declining to reconsider the ruling, we reverse the Court of Appeal's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying action concerns a rollover bus accident on October 17, 2010 in Meadview, Arizona. The bus passengers were ten Chinese tourists and their tour guide who were traveling from Las Vegas, Nevada for a day trip to the Grand Canyon in Arizona. The driver of the bus, Zhi Lu, a California resident, worked for TBE International, Inc. (TBE), a California

1

tour company that owned and operated the 16-seat tour bus. Lu drove the bus from Los Angeles, California and picked up the Chinese tourists at their Las Vegas hotel.

While en route to the Grand Canyon, Lu drove the bus around a curve at a high rate of speed and lost control. The bus rolled over twice. The driver and tour guide were in the front seats, which were equipped with three-point seatbelts (lap and shoulder restraints). Neither suffered any serious injury in the accident. None of the passenger seats, however, were equipped with seatbelts of any kind. Two passengers were killed. One female passenger was impaled in the door mechanism; a male passenger was ejected from the bus and fatally fractured his skull. Six other passengers were ejected from the bus and suffered injuries. The remaining two passengers, who were not ejected, sustained injuries as well.

In September 2011, the eight passengers and survivors of the two passengers who were killed (plaintiffs) filed an action in Los Angeles County Superior Court against two California-based defendants, the tour bus company TBE, and the distributor who sold the tour bus to TBE, Los Angeles Truck Centers, LLC dba Buswest (Buswest), a California corporation with multiple locations nationwide. Plaintiffs also sued the bus manufacturer, Forest River, Inc. (Forest River), an Indiana corporation that designed, manufactured, and modified the tour bus, and Starcraft, a division of Forest River. Because the parties have referred to the buses as "Starcraft buses," we refer to the manufacturer of the buses as Starcraft. Unless otherwise noted, references to Starcraft necessarily include Forest River.

In their operative second amended complaint, plaintiffs alleged causes of action for wrongful death, negligence, strict

products liability, loss of consortium, and negligent infliction of emotional distress. That the driver, Lu, was at fault for the accident was not in dispute. The main theories of plaintiffs' action were that Starcraft negligently designed and manufactured the bus and that Buswest chose to order the bus without seatbelts, which would have prevented the deaths and, at the very least, would have minimized the injuries of the passengers in the rollover crash.

In December 2012, TBE and Lu settled with plaintiffs for $5 million, in exchange for a full release of all claims against them. One year later, after the governing two-year statute of limitations had already run (Code Civ. Proc., § 335.1), defendants Starcraft and Buswest (collectively, defendants) filed a "Joint Notice of Motion and Motion Regarding Choice of Law on Behalf of Defendants" to determine the choice of law. In that motion, defendants alleged that plaintiffs' claims "potentially implicate" four different jurisdictions, i.e., Indiana, Arizona, China, and California. Defendants maintained that under the governmental interest test to determine the choice of law (see *Reich*, *supra*, 67 Cal.2d 551), Indiana law applied. After considering the parties' extensive briefing, the trial judge (Judge Kendig)[1] granted defendants' motion and concluded that Indiana law governed the case. Plaintiffs filed a writ of mandate challenging the trial court's ruling on the choice of law, which

---

[1] Although it is generally not customary to identify trial judges by name in opinions, we have done so here when necessary to distinguish between Judge Kendig and Judge Czuleger, who was reassigned to the matter, and their respective rulings. (See *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1491, fn. 2.)

the Court of Appeal denied based on plaintiffs' failure to show entitlement to extraordinary relief.

In August 2014, the same month the trial was originally set to begin, plaintiffs settled with Starcraft for $3.25 million, and, over Buswest's opposition, Judge Kendig granted Starcraft's motion for good faith settlement (Code Civ. Proc., § 877.6). After the settlement left California-based Buswest as the sole defendant, Buswest filed a motion for summary judgment under Indiana law, which the trial court denied. The trial court also denied plaintiffs' request that it reconsider its choice of law ruling. The original trial date of August 18, 2014 was vacated, and the trial date was continued.

In November 2014, plaintiffs filed a "Motion in Limine No. 4 to Apply California Law," alleging that "[f]or choice-of-law purposes, plaintiffs' settlement with the Indiana defendants has completely transformed the relevant legal landscape." On February 20, 2015, six weeks before trial was set to begin, a newly assigned trial judge (Judge Czuleger) denied the motion on procedural grounds, specifically declining to reconsider Judge Kendig's choice of law ruling. Judge Czuleger opined that he would deny on the merits as well, noting that plaintiffs' motion did not present "any new or different facts justifying a reconsideration." On a final note, Judge Czuleger added that a choice of law determination "should not change at the last hour before trial because of settlement of certain parties. The parties have prepared for trial based on a definitive ruling by the previous judge. The parties should be able to rely on that ruling in their trial preparation. The happenstance of a change in parties should not affect the law to be applied here."

After the jury was sworn in on April 9, 2015, the trial proceeded under Indiana products liability law, which imported a negligence standard in the definition of a defective product. (See Ind. Code § 34-20-2-1 [seller may be liable if "user or consumer is in the class of persons that the seller *should reasonably foresee* as being subject to the harm caused by the defective condition" (italics added)]; *id.*, § 34-20-2-2 [plaintiff "must establish that the manufacturer or seller *failed to exercise reasonable care* under the circumstances in designing the product" (italics added)].) Plaintiffs focused on Buswest's decision to order the bus without the $12 lap belts. In its defense, Buswest contended its decision not to include seatbelts constituted an exercise of reasonable care because the federal National Highway Transportation Safety Administration standards did not require lap belts in this bus; the industry standard at the time was to *not* include seatbelts; and lap belts could cause serious injuries to passengers in frontal collisions, which were more common than rollover accidents.

In a vote of 10 to two, the jury rendered a defense verdict on April 27, 2015. It concluded that while Buswest was a manufacturer or seller of the bus under Indiana law, the bus was not in a "defective condition" at the time of the accident. Judgment was entered in favor of Buswest, and plaintiffs appealed.

The Court of Appeal reversed. First characterizing each side's motion to determine the choice of law as a motion in limine, the Court of Appeal concluded that the trial court "should have fully reconsidered" the initial choice of law ruling because "once Starcraft had been dismissed from the case, any interest Indiana had in applying its law to *Starcraft* was no

5

longer at issue." It did not, however, consider the correctness of the trial court's initial choice of law ruling.

The Court of Appeal rejected Buswest's contention that under *Reich, supra,* 67 Cal.2d 551, the choice of law is fixed at the time of the accident. Rather, the court reasoned, "[t]he relevant interests cannot be accurately determined until the defendants, and the theories of liability alleged against them, are known—things that are only known for certain as the case gets closer to trial." The Court of Appeal applied the governmental interest test and determined that California law governed. Finding the error prejudicial, the court reversed the judgment and remanded for a new trial governed by California products liability law.

We granted review.

## DISCUSSION

"Perhaps no legal subject has caused more consternation and confusion among the bench and bar than choice of law." (Smith, *Choice of Law in the United States* (1987) 38 Hastings L.J. 1041 (Smith); see *Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313, 321 ["endless variety of choice of law problems"].) "Unfortunately, the complexity of a legal concept is often directly proportional to its practical importance. Choice of law is no exception. The choice of law decision may determine the success or failure of a lawsuit, the amount of damages recoverable, or the legality of a defense raised." (Smith, *supra,* 38 Hastings L.J. at p. 1042.)

In California, "general choice-of-law rules have been formulated by courts through judicial decisions rendered under the common law, rather than by the legislature through statutory enactments." (*McCann v. Foster Wheeler LLC* (2010)

48 Cal.4th 68, 83 (*McCann*) [collecting cases].)  As the forum state, California will apply its own law "unless a party litigant timely invokes the law of a foreign state." (*Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 581; see *Reich, supra*, 67 Cal.2d at p. 553.)

To determine which jurisdiction's law will govern, a trial court applies the governmental interest test, which sets out a three-step inquiry:  "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state' [citation], and then ultimately applies 'the law of the state whose interest would be the more impaired if its law were not applied.' " (*Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 107-108 (*Kearney*) [applying court's "seminal" decision in *Reich*]; see *Offshore Rental Co. v. Continental Oil Co.* (1978) 22 Cal.3d 157.)

In this case, the correctness of Judge Kendig's initial choice of law ruling is not at issue.  The Court of Appeal expressly declined to address the propriety of that ruling, and we do so as well.  The question is limited to whether the trial court should have reconsidered its initial ruling after a defendant settled out of the case.  In other words, was there any

legal or factual basis that compelled the trial court to revisit the choice of law ruling?

Although we have found no case in this or any other jurisdiction specifically addressing whether a choice of law ruling should be revisited under these circumstances, defendant Buswest maintains that *Reich* is instructive and precludes any consideration of the parties' subsequent settlement. *Reich* cautioned that "if the choice of law were made to turn on *events happening after the accident*, forum shopping would be encouraged." (*Reich*, *supra*, 67 Cal.2d at p. 555, italics added.) Plaintiffs, however, counter that *Reich* was referring to the underlying facts of the accident itself and not what plaintiffs refer to as "litigation facts," that is, events that occur during the litigation like a party's dismissal from the case. Unlike facts underlying the accident itself, litigation facts like the requisite parties and potential claims are not yet known, and therefore *cannot* be fixed at the time of the accident.

We agree with plaintiffs that *Reich* focused not on identifying the pertinent parties in the action, but on the parties' true domicile as it related to the measure of damages. (*Reich*, *supra*, 67 Cal.2d at pp. 555-556.) Plaintiffs' argument, however, goes further than simply distinguishing *Reich*. They suggest that the trial court was *required* to revisit the prior ruling that Indiana law governed after the only Indiana defendant settled out of the case.

In support of their position, plaintiffs focus on the Court of Appeal's decision, which likened a motion to determine the choice of law to a motion in limine. (See *State Farm Mutual Automobile Ins. Co. v. Superior Court* (2004) 121 Cal.App.4th 490, 502 [motion is "the equivalent of an in limine motion that

seeks to resolve a conflict of laws or choice of law issue"].) Emphasizing that Judge Kendig's choice of law ruling was only tentative, plaintiffs argue their settlement with Starcraft fundamentally changed the "calculus" of the governmental interests, requiring a new determination on the choice of law. While we do not opine on whether courts *may* reconsider choice of law rulings, and if so, under what circumstances, we conclude that the trial court was not *required* to do so here.

In applying the governmental interest test, Judge Kendig provided an extended analysis of the interests at stake. At the time she ruled that Indiana law governed the case, the operative two-year statute of limitations (Code Civ. Proc., § 335.1) on plaintiffs' claims had already run. Plaintiffs had also settled with the bus driver and tour bus company a year earlier. (See *ante*, at p. 3.) As the case headed towards trial, plaintiffs focused on their strict products liability claim, i.e., that the tour bus was defective without seatbelts and that the manufacturer, who designed and manufactured the bus, along with the distributor, who ordered the bus without seatbelts, were liable. Plaintiffs did not contend that interested or indispensable parties to the litigation were not yet joined, or that the January 2014 choice of law ruling was otherwise premature.

Rather, plaintiffs' unwavering criticism throughout this case has been that Judge Kendig failed to give proper weight to California's interest when she first ruled that Indiana law governed. After Starcraft's exit, it is certainly understandable (if not predictable) that the issue of California's interest would again come to the fore. However, plaintiffs fail to persuade us that their decision to accept Starcraft's settlement offer, in and of itself, required the trial court to revisit its ruling. After plaintiffs sued both Starcraft and Buswest as joint tortfeasors,

9

plaintiffs later chose whether and when to settle with the Indiana-based manufacturer. That is not to say we consider the settlement (which Judge Kendig found was made in good faith), along with plaintiffs' subsequent dismissal of Starcraft, to be part of a strategy to revisit the choice of law issue. Rather, we simply observe that because plaintiffs were fully aware of the settlement, they are hard-pressed to argue any unfairness due to any consequence arising from the settlement. (See *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779, 793-794 [good cause for continuing summary judgment hearing where settlement was unexpectedly set aside days before hearing].)

Further, practical concerns underlying a court's management of a trial militate *against* revisiting the choice of law ruling under these circumstances. As discussed earlier (see *ante*, at p. 7), the governmental interest test is far from a mechanical or rote application of various factors. (See *Kearney*, *supra*, 39 Cal.4th at pp. 107-108, 110 [recognizing "distinct state interests that may underlie separate aspects of the issue"]; *McCann*, *supra*, 48 Cal.4th at p. 97 [explaining difficulty of balancing conflicting interests of individual states that " ' "are empowered to mold their policies as they wish" ' "].)

Moreover, a trial court's ruling on the governing law is often just the start to substantively resolving the case. After the court determines the choice of law, factfinders must then "try the facts necessary to determine liability in accordance with such choice." (*Beech Aircraft Corp. v. Superior Court* (1976) 61 Cal.App.3d 501, 517 [wrongful death action].) The importance of deciding the choice of law first, moreover, is manifest in class actions. (See *Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th 906, 915 ["choice-of-law determination is of

central importance" to class certification issues].) A "trial court cannot reach an informed decision on predominance and manageability without first determining whether class claims will require adjudication under the laws of other jurisdictions and then evaluating the resulting complexity where those laws must be applied." (*Id*. at p. 927.)

In short, given the importance of determining the choice of law early on in a case — to enable trial courts to manage proceedings in an orderly and efficient fashion — we conclude that circumstances in which trial courts are *required* to revisit a choice of law determination, if any, should be the exception and not the rule. On that note, we underscore that we do not reach the question whether trial courts *may* revisit a prior choice of law ruling. Nor do we opine that there are *no* circumstances under which the trial court would be obligated to reconsider the choice of law. We hold only that, in this case, plaintiffs fail to demonstrate that their decision to accept a settlement offer from one defendant constitutes such an exceptional circumstance.

## CONCLUSION

Based on the foregoing, we reverse the Court of Appeal's judgment and remand for further proceedings consistent with this opinion.

CHIN, J.

We Concur:

CANTIL-SAKAUYE, C. J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.
GROBAN, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Chen v. L.A. Truck Centers, LLC

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 7 Cal.App.5th 757
**Rehearing Granted**

_____

**Opinion No.** S240245
**Date Filed:** July 22, 2019

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** J. Stephen Czuleger and Holly E. Kendig

_____

**Counsel:**

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Girardi & Keese and David R. Lira for Plaintiffs and Appellants.

Shook, Hardy & Bacon, Frank C. Rothrock, Douglas W. Robinson, Janet L. Hickson and Kevin Underhill for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Martin N. Buchanan
Law Offices of Martin N. Buchanan
655 West Broadway, Suite 1700
San Diego, CA  92101
(619) 238-2426

Kevin Underhill
Shook, Hardy & Bacon
5 Park Plaza, Suite 1600
Irvine, CA  92614-2546
(949) 475-1500