Filed 11/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HAIRU CHEN et al., | B265304 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC469935) |
| v. | |
| LOS ANGELES TRUCK CENTERS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  J. Stephen Czuleger and Holly E. Kendig, Judges.  Affirmed.

Law Offices of Martin N. Buchanan, Martin Buchanan; Girardi & Keese and David R. Lira for Plaintiffs and Appellants.

Shook, Hardy & Bacon, M. Kevin Underhill, Frank Rothrock and Janet L. Hickson for Defendant and Respondent.

\* \* \* \* \* \* \* \* \*

## SUMMARY

This case is before us on remand from the Supreme Court.

Plaintiffs, Chinese nationals, brought a tort action after a fatal tour bus accident in Arizona. They sued defendants from Indiana and California. After a settlement and dismissal of the California tour bus operator and the California driver, the remaining defendants were the Indiana manufacturer of the bus and the California distributor that purchased the bus and sold it to the tour operator. The operative complaint included causes of action for wrongful death, negligence and strict products liability. It was undisputed the driver was at fault for the accident. Plaintiffs' main theories were that the Indiana defendant negligently designed and manufactured the bus and the California defendant chose to order the bus without seatbelts, which would have prevented the deaths and minimized the injuries in the rollover crash.

Defendants sought a determination that Indiana law applied. Indiana products liability law is less favorable to plaintiffs than is California law. The trial court, applying California's governmental interest test to determine the choice of law, concluded that Indiana law governed the case.

After that ruling, the Indiana manufacturer settled with plaintiffs, and the California distributor was the sole remaining defendant. Plaintiffs filed a motion in limine seeking application of California law. A newly assigned trial judge denied the motion, and the trial proceeded under Indiana products liability law to a 10-2 defense verdict. Plaintiffs appealed, and we reversed the judgment. We concluded the trial court should have reconsidered the choice-of-law ruling after the Indiana defendant

2

settled with plaintiffs; California law governed; and the error was prejudicial.

The Supreme Court reversed our decision, finding the trial court was not required to reconsider the choice of law after the Indiana defendant settled out. The court concluded the trial court *may* revisit a choice-of-law decision, and there may be cases in which the trial court is obligated to reconsider the decision, but this was not one of them. The court remanded the case to us for further proceedings consistent with its opinion. (*Chen v. Los Angeles Truck Centers, LLC* (2019) 7 Cal.5th 862 (*Chen*), reversing *Chen v. L.A. Truck Centers, LLC* (2017) 7 Cal.App.5th 757.)

On remand, plaintiffs ask us to find the trial court's initial decision to apply Indiana law was wrong. Neither this court nor the Supreme Court had addressed the propriety of that ruling. Plaintiffs argue (and our earlier opinion stated) that California has a strong interest in imposing its products liability law on a California defendant that allegedly imported a defective product for sale in California. They further argue that Indiana had no interest in having its products liability law applied to its resident manufacturer.

We have reconsidered our earlier analysis of California's interest in applying its products liability law in a case where there are no California plaintiffs and no one sustained injuries in California. We now find that under those circumstances, California's interest in applying its law is hypothetical, since no actual harm occurred in California giving rise to an interest to deter conduct or compensate victims. Plaintiffs' assertion that Indiana had "no interest" in having its products liability law applied is mistaken, as is demonstrated by Indiana's high court

3

precedents. Because Indiana had a real interest in applying its law, and California's interest was only hypothetical, there was no true conflict. Even if there were a true conflict, we would be required to conclude, under the governmental interest test, that Indiana law applies because its interest would be more impaired if its policy were subordinated to the policy of California. Therefore, the trial court correctly applied Indiana products liability law.

Accordingly, we affirm the judgment.

## FACTS

The facts underlying the lawsuit and the procedural background have been described both by the Supreme Court and in our earlier decision. (See *Chen, supra,* 7 Cal.5th at pp. 864-866; 7 Cal.App.5th at pp. 760-766.) A brief summary here will suffice.

Plaintiffs are passengers, or survivors of passengers, who were injured or killed in a rollover accident in Arizona. They were travelling from Las Vegas to the Grand Canyon for a day trip. The driver had driven the bus from Los Angeles to Las Vegas to pick them up for their Grand Canyon tour. The driver was at fault.

The driver and tour guide had lap and shoulder restraints and were virtually uninjured, but the passengers had no seatbelts. Two passengers died and the rest were injured. Plaintiffs' theory of the case was that passenger seatbelts would have prevented the deaths and greatly lessened the injuries suffered.

4

The bus was manufactured in Indiana by an entity known as Starcraft.[1]  Starcraft sold its buses nationally, through a network of dealers.  Defendant L.A. Truck Centers, LLC, doing business as Buswest, was Starcraft's exclusive dealer in California, and has its principal place of business in California.

When Buswest ordered the bus, it could have purchased non-retractable passenger lap belts for the bus for $12 each.  It also could have ordered retractable passenger lap and shoulder belts for $45 each.  Buswest ordered the bus without passenger seat belts, Starcraft manufactured the bus as ordered, and Buswest picked it up in Indiana and had it driven to California.  Two years later, Buswest sold the bus to a California tour company.  Buswest and the tour company arranged for delivery of the bus in Las Vegas, so that the tour company could obtain license plates enabling the bus to be used interstate.

After plaintiffs filed suit, the tour company and driver settled with plaintiffs for $5 million.  A year later, Starcraft and Buswest filed a motion to apply the substantive law of Indiana to the case.  After that motion was granted, Starcraft settled out for $3.5 million.  As indicated above, the case went to trial under Indiana products liability law, with Buswest as the only defendant.

As the Supreme Court explained, Indiana law "imported a negligence standard in the definition of a defective product.  [Citations.]  Plaintiffs focused on Buswest's decision to order the

---

[1]     There were two Indiana defendants:  Forest River, Inc., the Indiana corporation that designed, manufactured, and modified the tour bus, and Starcraft, a division of Forest River.  The parties refer to "Starcraft buses," so we refer to the Indiana manufacturer as Starcraft.

bus without the $12 lapbelts. In its defense, Buswest contended its decision not to include seatbelts constituted an exercise of reasonable care because the federal National Highway Transportation Safety Administration standards did not require lapbelts in this bus; the industry standard at the time was to *not* include seatbelts; and lapbelts could cause serious injuries to passengers in frontal collisions, which were more common than rollover accidents." (*Chen, supra,* 7 Cal.5th at p. 866.) The jury concluded that "while Buswest was a manufacturer or seller of the bus under Indiana law, the bus was not in a 'defective condition' at the time of the accident." (*Ibid.*)

Judgment was entered for Buswest, and the ensuing appeal was resolved as we described at the outset. On remand from the Supreme Court, the sole issue is whether the trial court's *initial* choice of Indiana law – made at the behest of defendants Starcraft (the Indiana manufacturer) and Buswest (the California distributor) – was correct.

## DISCUSSION

We review the trial court's choice-of-law ruling de novo. (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 274.)

### 1. The Governing Principles

The Supreme Court, in *Chen* and other cases, has described how a California court determines which jurisdiction's law will govern in choice-of-law cases. The trial court must apply the governmental interest test, "requiring an analysis of the respective interests of the states involved." (*Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 579 (*Hurtado*).) The California Supreme Court adopted the governmental interest test in *Reich v. Purcell* (1967) 67 Cal.2d 551, and in so doing, the court renounced the former rule that the law of the place of the wrong applied in tort actions regardless of the issues before the court.

6

The objective of the governmental interest test "is 'to determine the law that most appropriately applies to the issue involved.'" (*Hurtado, supra,* 11 Cal.3d at pp. 579-580, quoting *Reich v. Purcell, supra,* 67 Cal.2d at p. 555.) Here, the issue, as *Chen* observes, was the plaintiffs' products liability claim. (*Chen, supra,* 7 Cal.5th at pp. 866, 869.)

"As the forum state, California will apply its own law 'unless a party litigant timely invokes the law of a foreign state.'" (*Chen, supra,* 7 Cal.5th at p. 867.) In that event, the party invoking a foreign state's law – here, Indiana law – "must demonstrate that the [foreign state's] rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." (*Hurtado, supra,* 11 Cal.3d at p. 581.)

The governmental interest test is applied using a three-step inquiry. " 'First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" [citation], and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied." ' " (*Chen, supra,* 7 Cal.5th at pp. 867-868.)

7

## 2. Application of the Governmental Interest Test to the Products Liability Issue

### a. The first step: different rules of law

The law on products liability is different in Indiana and California. As *Chen* states, Indiana products liability law imports a negligence standard into the definition of a defective product. (*Chen, supra,* 7 Cal.5th at p. 866.) California does not. (See *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 434 ["[T]he fact that the manufacturer took reasonable precautions in an attempt to design a safe product or otherwise acted as a reasonably prudent manufacturer would have under the circumstances, while perhaps absolving the manufacturer of liability under a negligence theory, will not preclude the imposition of liability under strict liability principles if, upon hindsight, the trier of fact concludes that the product's design is unsafe to consumers, users, or bystanders."].)

### b. The second step: is there a true conflict?

As the Supreme Court directs, we next examine each jurisdiction's interest "in the application of its own law under the circumstances of the particular case" (*Chen, supra,* 7 Cal.5th at pp. 867-868), to determine whether a true conflict exists. "Although the two potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied." (*Hurtado, supra,* 11 Cal.3d at p. 580.) The state's interest must be real rather than hypothetical, as explained in *Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313, 318-320 (*Bernhard*) (discussing the proper resolution of a true conflicts case).

8

*Bernhard* tells us that "when under the governmental interest approach a preliminary analysis reveals an apparent conflict of interest upon the forum's assertion of its own rule of decision, the forum should reexamine its policy to determine if a more restrained interpretation of it is more appropriate. '[To] assert a conflict between the interests of the forum and the foreign state is a serious matter; the mere fact that a suggested broad conception of a local interest will create conflict with that of a foreign state is a sound reason why the conception should be reexamined, with a view to a more moderate and restrained interpretation both of the policy and of the circumstances in which it must be applied to effectuate the forum's legitimate purpose.' . . . This process of reexamination requires identification of a 'real interest as opposed to a hypothetical interest' on the part of the forum." (*Bernhard, supra,* 16 Cal.3d at p. 320.) The point is to identify "a true conflict of the governmental interests involved *as applied to the parties under the particular circumstances of the case.*" (*Ibid.,* italics added.)

When we consider "the particular circumstances of the case" (*Bernhard, supra,* 16 Cal.3d at p. 320), we find there is no true conflict—that is, Indiana's interest is real and California's interest, as applied to the parties here, is hypothetical.

Indiana's rule of decision on defective products, which is more business-friendly than the California rule, furthers Indiana's interest in providing an attractive environment for its manufacturers by protecting them from excessive liability or damage awards. Indiana's rule of decision effectively limits liability "for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises." (*McCann v.*

9

*Foster Wheeler LLC* (2010) 48 Cal.4th 68, 91 [applying Oklahoma law] (*McCann*).)

In *McCann*, the Supreme Court applied Oklahoma's more business-friendly statute of repose in a mesothelioma case brought by a California resident who was exposed to asbestos in Oklahoma decades earlier when he resided in Oklahoma. The court found Oklahoma had "a legitimate interest in attracting out-of-state companies to do business within the state, both to obtain tax and other revenue that such businesses may generate for the state, and to advance the opportunity of state residents to obtain employment and the products and services offered by out-of-state companies." (*McCann, supra,* 48 Cal.4th at pp. 91-92.)

The *McCann* court cited prior choice-of-law opinions that recognized foreign states' rules against excessive damage awards protected valid and legitimate interests that may justify application of the foreign state's law when there is a true conflict with California law. (See, e.g., *Castro v. Budget Rent-A-Car System, Inc.* (2007) 154 Cal.App.4th 1162, 1181 [Alabama law applied to suit brought by California resident injured in an automobile accident in Alabama; Alabama, whose law limited the potential liability of a vehicle owner for the negligence of a permissive user, has an interest "in not having vehicle owners and drivers in its jurisdiction subjected to different liabilities based on the fortuity of which state a plaintiff happens to be a resident"]; cf. *Reich v. Purcell, supra,* 67 Cal.2d at p. 556 [Missouri's limitation on damages operates to avoid the imposition of excessive financial burdens on defendants, but Missouri has no interest in applying that rule to travelers from states (California and Ohio) having no similar limitation]; *Hurtado, supra,* 11 Cal.3d at p. 581 [Mexico's limitation of

10

damages did not conflict with California because Mexico has no interest in applying that rule where no defendant resides in Mexico and its rule would deny full recovery to its residents].)

In short, it is clear that Indiana has a legitimate interest in the application of its products liability law to its resident defendant (Starcraft) and those who do business with Starcraft.

On the other hand, when we examine California's interest in applying its more expansive products liability law, we find an interest that is more hypothetical than real, when "applied to the parties under the particular circumstances of the case." (*Bernhard, supra,* 16 Cal.3d at p. 320.)

Plaintiffs in this case are not California residents and were not injured in California.  California has a theoretical interest in the application of its strict products liability rules because Buswest, a California defendant, placed an allegedly defective product into the stream of commerce, importing it and selling it to a California tour operator.  The policy behind imposing strict products liability " 'is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.' " (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1186.)  But the underlying basis for the policy is the protection of California residents and other persons within its territorial jurisdiction from injury. California's interest in imposing that policy becomes hypothetical when the injured persons are not California residents and were not injured in California.

Consequently, we conclude there is no true conflict in this case.  And even if there were, when we apply the comparative

11

impairment analysis (the third step of the governmental interest test, *post*), the result is the same: Indiana law applies.

Before we apply the comparative impairment rule to this case, we address plaintiffs' contention that Indiana has "no genuine interest" in applying its products liability law to this case. Plaintiffs contend Indiana courts would not apply Indiana products liability law to this case, and so a California court should not do so either. The basis for this argument is the claim that Indiana still follows the law that the place of the wrong determines the choice of law in tort actions (the *lex loci* rule), so Indiana would apply Arizona law because the rollover happened there. We think it is a dubious proposition that an Indiana court would apply Arizona law to a case involving an Indiana defendant and no Arizona parties, where neither plaintiffs nor defendants seek the application of Arizona law. More to the point, plaintiffs are mistaken in their understanding of Indiana law.

In their initial briefing, plaintiffs cited no California authority, only federal decisions and decisions from other states, for the proposition that a court may consider whether the other state would apply its own law. In their supplemental brief, plaintiffs cite *Robert McMullan & Son, Inc. v. United States Fidelity & Guaranty Co.* (1980) 103 Cal.App.3d 198 (*McMullan*). *McMullan* is an insurance breach of contract case where the court decided no conflict existed in the first place. (*Id.* at pp. 202-204.) We do not see how *McMullan* advances plaintiffs' case.[2]

---

[2]     *McMullan* involved whether the plaintiff could recover attorney fees after it successfully sued its insurer for wrongful withdrawal from the defense of an action brought against the plaintiff in Florida. (*McMullan, supra,* 103 Cal.App.3d at p. 200.)

In any event, plaintiffs misunderstand Indiana law. As one case plaintiffs cite from Montana points out, by the end of 1998, "only 11 states still adhered to the *lex loci* rule, and their continued adherence is questionable." (*Phillips v. GMC* (Mont. 2000) 995 P.2d 1002, 1007, citing Symeonides, *Choice of Law in the American Courts in 1998: Twelfth Annual Survey* (1999) 47 Am. J. Comparative Law 327, 331.) Indiana is *not* one of those 11 states. (Symeonides, at p. 330.)

Plaintiffs omit to tell us that Indiana "liberalize[d] [its] approach" in 1987, so that "in tort cases Indiana choice-of-law analysis now involves multiple inquiries." (*Simon v. United States* (Ind. 2004) 805 N.E.2d 798, 804 (*Simon*), citing *Hubbard Manufacturing Co., Inc. v. Greeson* (Ind. 1987) 515 N.E.2d 1071 (*Hubbard*).)

In *Simon*, the Indiana Supreme Court explained that the *lex loci* rule "may be overcome if the court is persuaded that 'the place of the tort "bears little connection" to this legal action.' "

---

The plaintiff was a California corporation, and the insurance contracts were purchased, issued and delivered in California. California law did not authorize recovery of attorney fees (*id.* at p. 202), and Florida law was the same as California law (*id.* at p. 203). Maryland (the state of the insurer's residence and where the decision to breach occurred) had no statutory law on the subject, although in some cases, Maryland residents who sued insurance companies in Maryland for breach of policies issued in Maryland had recovered fees. (*Id.* at p. 203.) The *McMullan* court then added that Maryland law was clear on a "further point" that, under Maryland contract law, the place of contracting (which was California) determines the validity and effect of the provisions in the policy. (*Id.* at pp. 203-204.) None of the analysis in *McMullan* is instructive here.

13

(*Simon, supra*, 805 N.E.2d at p. 805, quoting *Hubbard, supra,* 515 N.E.2d at p. 1074.) "If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant . . . . All contacts 'should be evaluated according to their relative importance to the particular issues being litigated.' " (*Ibid.*)

In *Hubbard*, the Indiana Supreme Court ruled that Indiana law applied to a wrongful death suit where an Indiana resident was killed in Illinois while working on a lift used to repair street lights. The decedent's wife sued the Indiana company that manufactured the lift. The accident happened in Illinois, the coroner's inquest occurred in Illinois, and Illinois paid workers compensation benefits to the decedent's heirs, but the court found none of those facts related to the wrongful death action. "The plaintiff's two theories of recovery relate to the manufacture of the lift in Indiana. Both parties are from Indiana; plaintiff Elizabeth Greeson is a resident of Indiana and defendant Hubbard is an Indiana corporation with its principal place of business in Indiana. The relationship between the deceased and Hubbard centered in Indiana. The deceased frequently visited [the] defendant's plant in Indiana to discuss the repair and maintenance of the lift. Indiana law applies." (*Hubbard, supra,* 515 N.E.2d at p. 1074.)

In short, Indiana's high court precedents demonstrate that plaintiffs are mistaken in the notion that Indiana had "no genuine interest" in applying its products liability law to this case. Plaintiffs protest this conclusion, citing several cases for the proposition that in products liability cases, courts in the years since *Hubbard* have applied the law of the place where the product caused harm, rather than the law of Indiana where the

14

product was designed or manufactured.  The cited cases are all easily distinguishable from the facts in this case, where the place of the tort (Arizona) bears little connection to the products liability claims at issue.

For example, in *Alli v. Eli Lilly & Co.* (Ind.Ct.App. 2006) 854 N.E.2d 372 (*Alli*), the court applied Indiana choice-of-law analysis to conclude that the substantive law of Michigan applied to a products liability and wrongful death action against the manufacturer of the antidepressant Prozac.  (*Id.* at p. 375.)  In *Alli*, the defendant's corporate headquarters was in Indiana, but defendant was a global company selling its products worldwide and registered to do business in Michigan.  Michigan was the state where the decedent lived and worked; he was treated for depression and received all his medical treatment in Michigan; the medication was provided to the decedent's Michigan doctor by the defendant's Michigan-based sales representatives; and the decedent took the Prozac in Michigan and committed suicide there.  (*Id.* at pp. 375, 379.)  When the court, following the directions of *Simon* and *Hubbard*, examined whether the place of the tort "bears little connection" to the legal action, it found to the contrary that the place of the tort was significant.  (*Alli,* at pp. 376, 379.)  That being so, no further analysis was necessary. (*Ibid.*)  We fail to see how this case assists plaintiffs here, where the location of the tort is insignificant.[3]

---

[3]    The two federal cases plaintiffs cite are equally, or more, inapt.  In *Klein v. DePuy, Inc.* (7th Cir. 2007) 506 F.3d 553, the court found North Carolina's statute of repose applied rather than Indiana's longer statute of repose.  The case involved an allegedly defective hip prosthesis, manufactured by the Indiana defendant, that was used in hip replacement surgery in North

Plaintiffs also cite *Rexroad v. Greenwood Motor Lines, Inc.* (Ind.Ct.App. 2015) 36 N.E.3d 1181, which states that "*Simon* indicates . . . that automobile accidents were generally not intended to fall under this exception" to the presumption that the *lex loci* rule applies. (*Id.* at p. 1184.) The key is the word "generally." As *Simon* points out, the reason the *lex loci* presumption exists is "because in a 'large number of cases, the place of the tort will be significant and the place with the most contacts.'" (*Simon, supra,* 805 N.E.2d at p. 805.) This is not such a case. None of the cases plaintiffs cite changes anything about the proper application of *Simon* and *Hubbard.*

---

Carolina. (*Id.* at pp. 554, 555.) The court rejected the claim "that North Carolina bears little significance to the legal action," pointing out that the plaintiff resided, consulted with doctors, and decided to undergo surgery in North Carolina, and received his prosthesis, diagnosis, revision surgery, and all of his medical care there. (*Id.* at p. 556.) Indeed, the court concluded that "[w]e would be hard-pressed to conclude anything but that the location of the injury is significant to this action." (*Ibid.*) The other case, *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation* (7th Cir. 2002) 288 F.3d 1012, has no apparent relevance. Based on choice-of-law concerns, it reversed a district court's order certifying two nationwide class actions. (*Id.* at p. 1021.) Plaintiffs merely quote a sentence describing Indiana as a *lex loci* state that applies the law of the place where the harm occurred in all but exceptional cases, citing *Hubbard.* (*Id.* at p. 1016.) But *Hubbard* itself explicitly states that "[a] court should be allowed to evaluate other factors when the place of the tort is an insignificant contact." (*Hubbard, supra,* 515 N.E.2d at p. 1073.)

16

### c. The third step: comparative impairment

As we have said, we find no true conflict in this case. But even assuming a true conflict, the result does not change.

*McCann* instructs that in cases where there is a true conflict, a court must then evaluate and compare the nature and strength of each state's interest to determine which would be more impaired if its policy were subordinated to that of the other state. (*McCann, supra,* 48 Cal.4th at pp. 96-97.)

*McCann* cautions: "[I]t is important to keep in mind that '[t]he court does not " 'weigh' the conflicting governmental interests in the sense of determining which conflicting law manifested the 'better' or the 'worthier' social policy on the specific issue." ' " (*McCann, supra,* 48 Cal.4th at p. 97.) The process involves determining the appropriate limitations on the reach of state policies, as distinguished from evaluating the wisdom of those policies. (*Ibid.*) The court summarizes: "Accordingly, our task is not to determine whether the [Indiana] rule or the California rule is the better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." (*Ibid.*)

We conclude the trial court properly allocated the predominating lawmaking power to Indiana, under the circumstances that existed when the question was presented to the court. To recap those circumstances: There were only two defendants, the Indiana corporation that designed, manufactured and sold the bus in Indiana; and the California distributor that bought the bus in Indiana, brought it into California and sold it to the tour company that used it in California, Arizona and

17

Nevada.  When those defendants moved for application of Indiana law, the California tour company and driver had been dismissed from the case, so any interest California may have had in applying its law to those defendants was not at issue, and the trial court correctly did not consider those interests.  There were no California plaintiffs, and no injuries occurred in California.  The action, as the trial court observed, was "premised on the main allegation that the bus was defective because it was not properly designed for handling and stability, crashworthiness, and lacked seatbelts and air curtains."

Under these circumstances, Indiana's interest in providing a business-friendly environment that protects its resident manufacturers from excessive financial burdens is more compelling than California's interest in applying its products liability law.  We reach this conclusion based on the specific circumstances of this case, and recognizing that we may not consider which state's products liability rules manifest the worthier or wiser social policy.  (*McCann, supra,* 48 Cal.4th at p. 97.)

Indiana's policy protects its manufacturers by importing a reasonableness standard into its products liability law.  The application of California law to this case would clearly impair that policy by exposing an Indiana corporation and a distributor of its products to the risk of significantly expanded liability without evidence the manufacturer was negligent in designing and manufacturing its allegedly defective product.

By contrast, the application of California law would not protect California residents or anyone who was injured in California.  As *Hurtado* tells us, a state's interest in providing compensation to survivors in a wrongful death case "extend[s]

18

only to local decedents and local beneficiaries." (*Hurtado, supra,* 11 Cal.3d at p. 584.) None of the plaintiffs was local to California; they were Chinese nationals touring from Las Vegas to the Grand Canyon.

California's interest in ensuring that manufacturers bear the financial burden of defective products is also primarily local in character, to protect California residents and persons who are injured in California from having to bear the financial costs of injuries caused by defective products. The fact that California's products liability law is more liberal than Indiana's does not permit us to find Indiana law should be subordinated to California law in this case, where the manufacturer's and distributor's conduct caused no injuries in California or to California residents. (See *McCann, supra,* 48 Cal.4th at p. 99 ["Certainly, if the law of this state is not applied here, California will not be able to extend its liberal statute of limitations for asbestos-related injuries or illnesses to some potential plaintiffs whose exposure to asbestos occurred wholly outside of California. Nonetheless, our past choice-of-law decisions teach that California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California."].) Similarly, California's interest in applying its strict products liability law is less when the allegedly tortious conduct of one of the two defendants occurred elsewhere and where there are no California residents to protect.

Of course, a tragic tour bus accident of the sort that occurred here might well have occurred on a California road, and California residents might have been in that tour bus. If either of those circumstances had occurred, our analysis would be

19

different.  But, "[w]e must seek . . . to identify the ' "real interest as opposed to a hypothetical interest" ' [citation] in enforcing forum law."  (*Cable v. Sahara Tahoe Corp.* (1979) 93 Cal.App.3d 384, 394.)  To apply California law in these circumstances would be to extend the reach of California's protection against defective products to foreign nationals injured in another jurisdiction.  The reach of California's lawmaking power in respect of its products liability policy is appropriately confined to the protection of California residents and persons injured within California's borders.

Because there is no true conflict, and because in any event the interests of Indiana would be more impaired if its policy were subordinated to that of California, the trial court's conclusion that Indiana law should apply was correct.

## DISPOSITION

The judgment is affirmed.  Defendant shall recover its costs on appeal.


GRIMES, Acting P. J.


WE CONCUR:


STRATTON, J.


WILEY, J.

20