Filed 5/6/22  Rincon EV Realty v. CP III Rincon Towers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RINCON EV REALTY LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CP III RINCON TOWERS, Inc., et al., <br><br> Defendants and Respondents; <br><br> RICHARD D. COHEN, <br><br> Intervener and Appellant. | A161541, A161542 <br><br> (County of San Francisco <br> Super. Ct. No. CGC 10-496887) |

Richard Cohen appeals after the trial court amended the judgment to add him as a judgment debtor on alter ego grounds in this commercial real estate dispute.[1]  The amendment makes Cohen liable for a $9.2 million attorney fees award entered against the plaintiff "Rincon" entities—Rincon EV Realty LLC, Rincon ET Realty LLC, and Rincon Residential Towers LLC.[2]  Cohen argues that, because the plaintiffs are Delaware limited

---

[1] The background of this litigation is set forth in prior opinions of this court.  (E.g., *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2017) 8 Cal.App.5th 1, 5–7 (*Rincon I*).)

[2] In addition to attorney fees, the judgment includes about $300,000 in statutory costs.  As discussed below, we have since reversed the order

1

liability companies (LLC's), the court should have applied Delaware law, rather than California law, to determine whether he is their alter ego. He also contends that bad faith must be proven to establish alter ego liability, and that there was no showing of bad faith here. Finally, Cohen claims there is no substantial evidence supporting the court's findings on the unity of interest and inequitable result elements of the alter ego standard. We affirm.

## I. BACKGROUND

### A. *The Loan and the Foreclosure*

In June 2007, plaintiffs purchased Rincon Towers, a San Francisco apartment complex (the Property) for approximately $143 million. (*Rincon I*, *supra*, 8 Cal.App.5th at p. 5.) Cohen, a real estate investor, holds controlling interests (either directly or through intermediate entities) in each of the three plaintiffs. The trial court found, and Cohen does not dispute, that Cohen controls the relevant entities and makes all important decisions for them.

Plaintiffs financed their purchase of the Property in part by borrowing $110 million (the Loan) from Bear Stearns Commercial Mortgage, Inc. (Bear Stearns). (*Rincon I*, *supra*, 8 Cal.App.5th at p. 5 & fn. 2.) In connection with the Loan, plaintiffs and Bear Stearns executed a Loan Agreement and a Cash Management Agreement. (*Id.* at pp. 5, 7.) In addition, Cohen and Bear Stearns entered a Guaranty Agreement providing that, under certain circumstances, Cohen would be personally liable for plaintiffs' obligations.

Bear Stearns collapsed in 2008, and one of the defendants in the present litigation—CP III Rincon Towers, Inc. (CP III)—ultimately acquired the Loan in April 2010. (*Rincon I*, *supra*, 8 Cal.App.5th at p. 6.) CP III

---

awarding those costs, subject to possible reinstatement by the trial court. (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (June 10, 2021, A155104, A155284) [nonpub. opn.] (*Rincon IV*).)

initiated nonjudicial foreclosure proceedings in June 2010.  (*Id.* at pp. 6–7.)
At a foreclosure sale in October 2010, CP III acquired the Property with a
$73 million credit bid.  (*Id.* at p. 7.)

**B. *Plaintiffs' Lawsuit and the Award of Fees and Costs***

In February 2010, plaintiffs filed the present lawsuit.  Their efforts to
enjoin the foreclosure were unsuccessful.  (*Rincon I, supra*, 8 Cal.App.5th at
p. 7.)  In their operative complaint at trial, plaintiffs asserted a variety of
legal and equitable claims, including legal claims for breach of contract and
an equitable claim to set aside the foreclosure sale. (See *id.* at pp. 5, 7.)  The
defendants included CP III and seven other entities involved in
administering the Loan, the unsuccessful workout negotiations, and the
eventual foreclosure sale.  (*Id.* at p. 5.)

Following extensive litigation (including a bench trial resulting in a
defense judgment, a partial reversal on appeal, and summary judgment
proceedings on remand), the trial court in October 2017 entered judgment in
favor of defendants as to all of plaintiffs' claims.  (See *Rincon EV Realty LLC
v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 988, 992–993
(*Rincon III*).)  We affirmed in December 2019.  (*Id.* at pp. 991, 993, 1006.)

In May and July 2018, the trial court entered orders awarding
prevailing-party attorney fees and costs to defendants, including
(1) $9,235,712.93 in fees pursuant to fee provisions in the parties' contracts,
and (2) $332,704.30 in statutory costs.  (*Rincon IV, supra*, A155104,
A155284.)  In June 2021, we affirmed the fee award but reversed the cost
award and remanded for further proceedings as to costs.  (*Ibid.*)

**C. *The Motion To Amend the Judgment***

In September 2018, shortly after the appeals of the fee and cost awards
were filed, the trial court amended the judgment to include those awards.  In
July 2019, defendants filed a motion to further amend the judgment to add

3

Cohen as a judgment debtor who would share plaintiffs' obligation to pay the fee and cost awards, on the ground he is plaintiffs' alter ego. Defendants stated in their motion that the judgment entered against plaintiffs remained unpaid.

Plaintiffs opposed the motion. The trial court also granted a motion by Cohen to intervene to contest the alter ego issue, and Cohen filed an opposition to defendants' motion to amend the judgment. After hearing argument, the court filed a thoughtful written order on September 2, 2020, granting defendants' motion to amend the judgment to add Cohen as a judgment debtor.[3] On September 28, 2020, the court entered a corrected amended judgment that named Cohen as a judgment debtor.

Cohen appealed the September 2, 2020 order granting the alter ego motion (No. A161541) and the September 28, 2020 corrected amended judgment (No. A161542). We consolidated the appeals pursuant to the parties' stipulation.[4]

## II. DISCUSSION

### A. *Authority To Amend Judgment and Standard of Review*

Under the broad authority granted by Code of Civil Procedure section 187, a trial court may amend a judgment to add as a judgment debtor

---

[3] As summarized in the court's September 2, 2020 order, the previously assigned trial judge (Hon. A. James Robertson II) entered an order in November 2019 granting the motion to amend the judgment, but he stayed that order after Cohen moved to intervene. Judge Robertson retired while further proceedings on the motion to amend were underway. In May 2020, the case was assigned to the Honorable Curtis E.A. Karnow, who granted Cohen's motion to intervene in June 2020 and ruled on the alter ego motion in September 2020.

[4] The plaintiff Rincon entities also filed notices of appeal, but they later dismissed their appeals.

4

a person who is the alter ego of the original judgment debtor.[5] (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280 (*Highland Springs*).)  The decision to grant or deny a motion to add a judgment debtor on alter ego grounds "lies within the sound discretion of the trial court [citation] and will not be disturbed on appeal if there is a legal basis for the decision and substantial evidence supports it." (*Ibid.*)

## B. *Legal Issues:  Choice of Law and Whether Bad Faith Is Required*

Before turning to the parties' arguments as to whether the specific elements of alter ego liability were established here, we address Cohen's contentions that (1) the court should have applied Delaware law to resolve the alter ego question, and (2) fraud or bad faith is a prerequisite to piercing the corporate veil.

### 1.  Choice of Law

Cohen contends the court erred by applying California law, rather than Delaware law, to determine whether he was plaintiffs' alter ego.  "As the forum state, California will apply its own law 'unless a party litigant timely invokes the law of a foreign state.' " (*Chen v. Los Angeles Truck Centers, LLC* (2019) 7 Cal.5th 862, 867.)  Here, Cohen took the position in his trial court briefing that Delaware law applied, arguing that, under Corporations Code section 17708.01, the law of the state in which an LLC is formed governs the question whether the LLC's veil should be pierced.  (See Corp. Code,

---

[5] Code of Civil Procedure section 187 states:  "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

§ 17708.01, subd. (a) [law of a foreign LLC's state of formation governs its "internal affairs" and the "liability" of its members and managers for the LLC's "debts, obligations, or other liabilities"]; see also *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1454, 1459, 1462 [where a California statute established which state's law applied to an issue, there was no need to conduct the usual "governmental interest analysis" to determine the choice-of-law question].) Cohen also stated, however, that "the choice-of-law decision should not matter here" because defendants' effort to pierce the corporate veil "fail[s] under both regimes" (i.e., under both Delaware and California law).

Based on this latter statement by Cohen and statements in the briefs filed by plaintiffs and defendants, the trial court concluded the parties "agree[d] there is no conflict" between California and Delaware law, and accepting that premise, it therefore determined California law (forum law) should apply. On appeal, Cohen argues he never meant to concede there is "no conflict" between the two states' laws. He now suggests that, although "the baseline alter ego factors are similar," Delaware veil-piercing law is "stricter," in particular because it requires a showing that the entity at issue is a "sham" designed to defraud investors and creditors. For their part, defendants argue Cohen forfeited this claim; the California statute he cites does not apply; and any error was not prejudicial because the two states' laws are the same.

We need not address whether Delaware law was applicable or whether Cohen adequately preserved the issue in the trial court, because he has not shown that any error in applying California law was prejudicial. As Cohen concedes, the two states apply similar standards to determine whether to impose alter ego liability. Cohen has not shown a reasonable probability

6

that, if the court had applied Delaware law, the result of the motion proceeding would have been more favorable to him. (See *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 526–528 [applying prejudice standard to alleged errors in adjudicating alter ego motion] (*Greenspan*).)

Under California law, there are " 'two general requirements' " for piercing the corporate veil: " ' "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." ' "[6] (*Greenspan, supra*, 191 Cal.App.4th at p. 511; see Corp. Code, § 17703.04, subd. (b) [alter ego doctrine applies to LLC's].) Similarly, under Delaware law (for both corporations and LLC's), the imposition of alter ego liability depends on "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." (*NetJets Aviation, Inc. v. LHC Communications, LLC* (2d Cir. 2008) 537 F.3d 168, 177–178 [applying Delaware law] (*NetJets*).) The decision depends on the facts of each case. (*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221 [" 'no litmus test' "] (*Curci*); *NetJets, supra*, 537 F.3d at p. 177 [no " 'single formula' "].)

With the partial exception of his argument as to bad faith (discussed in pt. II.B.2. below), Cohen does not develop any argument as to specific differences between California and Delaware alter ego law that would have

_____

[6] An additional requirement is that the person to be added as a judgment debtor controlled the underlying litigation and was virtually represented in that proceeding. (*Highland Springs, supra*, 244 Cal.App.4th at p. 280.) It is undisputed Cohen controlled plaintiffs' litigation against defendants, satisfying this requirement.

7

affected the outcome here.  He has not shown prejudice from the trial court's application of California law.

### 2.  Bad Faith

The principal element of Delaware law that Cohen contends was not satisfied here is a requirement that "fraud or bad faith" be shown as a prerequisite to piercing the corporate veil.  But even on this point, Cohen declines to argue there is an outcome-determinative difference between the two states' laws, insisting instead that he should prevail under either standard.  He asserts that, under *both* Delaware and California law, defendants had to prove fraud or bad faith as part of their alter ego showing.  The trial court (addressing California law) concluded it was not necessary to show fraud and that "Cohen's intent is irrelevant"; it is sufficient to show that an alter ego finding will avoid an inequitable or unjust result.  While case law (in both states) includes differing language on this point, we conclude a showing of fraud or bad faith is not a prerequisite to piercing the corporate veil.  The trial court did not err on this point under California law, and application of Delaware law would not have changed the result.

As to California law, Cohen cites *Westinghouse Electric Corp. v. Superior Court* (1976) 17 Cal.3d 259, where the Supreme Court stated that "separate corporate or partnership existence will not be disregarded except in instances of bad faith."  (*Id.* at p. 279; see *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 ["conduct amounting to bad faith"].)  Other Supreme Court articulations of the rule, however, focus on whether there will be an inequitable or unjust result if the corporate form is used as a shield, and do not expressly require a showing of bad faith.  (See, e.g., *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300–301 (*Mesler*).)  And as defendants note, even some older Supreme Court cases state that actual fraud is not required.  (*Minifie v. Rowley* (1921) 187 Cal. 481, 488; *Wenban*

8

*Estate, Inc. v. Hewlett* (1924) 193 Cal. 675, 697; *Gordon v. Aztec Brewing Co.* (1949) 33 Cal.2d 514, 523; see *Higgins v. Cal. Petroleum etc. Co.* (1898) 122 Cal. 373, 376.)

More recent Court of Appeal decisions have expressly held that " '[a]pplication of the *alter ego* doctrine does not depend upon pleading or proof of fraud.' [Citations.] The doctrine can be invoked when adherence to the fiction of the separate existence of the corporation would promote injustice [citation] or bring about inequitable results." (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1074; accord, *Triyar Hospitality Management, LLC v. WSI (II)–HWP, LLC* (2020) 57 Cal.App.5th 636, 642 [proof of bad faith is not required; "[a]ll the moving party is required to prove is that the alter ego's acts caused an inequitable result"]; *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 816.)

In light of the differing formulations of the inequity standard used by our Supreme Court, we disagree with Cohen's argument that we are compelled by *Westinghouse Electric Corp.* to hold that subjective wrongful intent on the part of the alleged alter ego must be proven as an irreducible minimum before the corporate veil will be pierced. Amending a judgment to add an alter ego is an equitable procedure (*Highland Springs*, *supra*, 244 Cal.App.4th at p. 280), and "[t]he essence of the alter ego doctrine is that justice be done" (*Mesler*, *supra*, 39 Cal.3d at p. 301). We conclude that, under California law, an inequitable or unjust result may be found without proof of wrongful intent.

Under Delaware law, alter ego liability similarly may be imposed without proof of fraud, if a failure to pierce the corporate veil would result in injustice. "To prevail under the alter-ego theory of piercing the veil, a plaintiff need not prove that there was actual fraud but must show a

9

mingling of the operations of the entity and its owner plus an 'overall element of injustice or unfairness.' " (*NetJets*, *supra*, 537 F.3d at p. 176; accord, e.g., *Walsh v. Hotel Corp. of America* (Del. 1967) 231 A.2d 458, 461 ["Even in the absence of fraud, there are cases which permit a direct action against the parent company where it has itself completely ignored the separate identity of its wholly owned subsidiary"]; *Microsoft Corporation v. Amphus, Inc.* (Del. Ch., Oct. 31, 2013, No. CV 8092-VCP) 2013 WL 5899003, *6 ["A subsidiary may be the alter ego or mere instrumentality of its parent when the two 'operate[] as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them' "].)

As Cohen notes, some Delaware cases state that "[t]he alter ego doctrine is used to pierce the corporate veil when a corporation has created 'a sham entity designed to defraud investors and creditors.' " (*In re Verizon Ins. Coverage Appeals* (Del. 2019) 222 A.3d 566, 577; see *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood* (Del. Ch. 1999) 752 A.2d 1175, 1184, fn. omitted ["Piercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.' Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."].) But the party seeking to pierce the corporate veil "need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." (*NetJets*, *supra*, 537 F.3d at p. 177.) We disagree with Cohen's suggestion that alter ego liability may never be imposed so long as an entity was initially created for a legitimate business purpose.

More broadly, although the Delaware cases (like the California cases) use differing articulations of the standard for alter ego liability, we are not persuaded that proof of subjective wrongful intent (rather than an

10

inequitable result) is an essential prerequisite to piercing the corporate veil. Cohen's argument on this point provides no basis for reversal. Since we have rejected Cohen's claims of error based on choice of law and bad faith, we turn to whether the court erred by imposing alter ego liability under California law.

### C. *The Trial Court Did Not Err by Imposing Alter Ego Liability*

As noted, under California law, the two basic requirements for piercing the corporate veil are " ' "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." ' " (*Greenspan*, *supra*, 191 Cal.App.4th at p. 511.) "While courts have developed a list of factors that may be analyzed in making these determinations, '[t]here is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case.' " (*Curci*, *supra*, 14 Cal.App.5th at p. 221.) As the trial court noted, a decision to pierce the corporate veil depends on the facts of the case and is only a determination that liability should be imposed for a specific purpose (e.g., on behalf of a specific creditor). (*Mesler*, *supra*, 39 Cal.3d at p. 301 ["a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands"].)

In determining it was appropriate to pierce the corporate veil here, the trial court focused on Cohen's control of plaintiffs and his use of another controlled entity—Capital Properties Services (CPS)—to fund "the last ten years of litigation conducted by the plaintiffs against the defendants, which caused defendants to incur the fees for which they now seek reimbursement." Because plaintiffs had no assets as a result of the foreclosure, these payments of what the trial court called " 'outside funds' " enabled plaintiffs to pursue

11

the litigation, but now that defendants have prevailed, plaintiffs are unable to satisfy the award of fees to defendants as contemplated by the fee clauses in the parties' contracts. The court concluded this result was inequitable, stating: "[Cohen] used his money—which was fine—to cause defendants [to] incur fees, without recourse; which is not fine."

Cohen challenges the court's conclusion, contending there is no substantial evidence of a unity of interest or an inequitable result that would support imposition of alter ego liability. We disagree.

### 1. Unity of Interest

In assessing whether the unity of interest requirement is met, courts consider a variety of factors. "Among the many factors to be considered in applying the doctrine are one individual's ownership of all stock in a corporation; use of the same office or business location; commingling of funds and other assets of the individual and the corporation; an individual holding out that he is personally liable for debts of the corporation; identical directors and officers; failure to maintain minutes or adequate corporate records; disregard of corporate formalities; absence of corporate assets and inadequate capitalization; and the use of a corporation as a mere shell, instrumentality or conduit for the business of an individual." (*Misik v. D'Arco*, *supra*, 197 Cal.App.4th at p. 1073.)

In addressing the unity of interest element here, the trial court emphasized Cohen's ownership of a controlling interest in plaintiffs and his use of CPS to move funds among a variety of his entities, including plaintiffs. The court found this funding method "allow[ed] the control contemplated by the unity of interest element" and was "connected with the assertedly inequitable result" (i.e., funding the litigation in a way that caused defendants to incur fees without recourse). The court found some other factors existed but were not significant in themselves, including the fact

Cohen and his entities share office space and attorneys and use an "informal style of management" that is common with closely held entities.

Cohen argues the factors found by the court are insufficient to establish the requisite unity of interest. He notes that, as the court recognized, other factors that may be relevant in some cases were not present. For example, there was no evidence Cohen withdrew plaintiffs' funds for his personal use, and there were "no material failures to follow the technicalities of the corporate form such as the absence of corporate minutes and the like" (an element that has less importance for LLC's than corporations in any event (Corp. Code, § 17703.04, subd. (b)).[7]

But the presence of all potentially relevant factors is not a prerequisite to finding a unity of interest. As noted, the determination whether to pierce the corporate veil depends on the specific circumstances of each case. (*Curci*, *supra*, 14 Cal.App.5th at p. 221.) And the court did not err in focusing on factors that were connected with the alleged inequity (the second element of the alter ego analysis) and deciding not to "dwell on factors which, while

---

[7] Cohen asks that we take judicial notice of a 2015 unpublished opinion issued by Division One of this court, addressing an effort by a different creditor to pierce the veil of one of the three Rincon entities involved in this case. "With certain exceptions, not applicable here, the Rules of Court generally prohibit us from noticing unpublished opinions. (Cal. Rules of Court, rule 8.1115(a).)" (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 269, fn. 2.) The cases cited by Cohen involved different circumstances and do not persuade us judicial notice is appropriate here. (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1173 [noticing unpublished opinions involving vexatious litigant to establish the number of litigations that had been determined adversely to him]; *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 217, fn. 14 [noticing unpublished opinion to identify the party litigants in a prior appeal].) We therefore deny the request.

indicating problems with[,] e.g.[,] corporate form, are not connected with the assertedly inequitable result."

Finally, we disagree with Cohen's argument that the court should not have considered, as a factor supporting a finding of a unity of interest, the use of a centralized disbursement account at CPS to pay attorney fees for this litigation. Although the use of a centralized cash management system for affiliated companies may not in itself establish undue control for alter ego purposes (see *Fletcher v. Atex, Inc.* (2d Cir. 1995) 68 F.3d 1451, 1459), the court could consider the use of this account as a factor that allowed control as contemplated by the unity of interest element and was related to the alleged inequity the court discussed later in its order. (See *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1342.) The court did not err in concluding there was a sufficient unity of interest between Cohen and plaintiffs to satisfy the first element of the alter ego test.

## 2. Inequitable Result

As to the inequitable result found by the trial court (i.e., that Cohen funded a decade of litigation by plaintiffs against defendants, but plaintiffs cannot pay the fees incurred by defendants in opposing their claims), Cohen contends this finding too was improper or not supported by the evidence. We disagree.

Cohen argues the corporate veil should not be pierced because defendants arguably have (or had) other possible means of recovering their fees. He contends defendants could have asked the trial court, early in the litigation, to require plaintiffs to post a bond under Code of Civil Procedure section 1030 (applicable to certain claims by out-of-state plaintiffs against California defendants) to ensure payment of their fees. He also suggests the guaranty he signed in 2007, which requires him to pay plaintiffs' obligations under certain circumstances and which is the subject of litigation between

14

defendants and Cohen in New York (see *Rincon I*, *supra*, 8 Cal.App.5th at p. 7, fn. 3), should preclude imposition of alter ego liability.

The conditional remedies provided by the cited statute and the guaranty do not require us to disturb the trial court's decision here. Code of Civil Procedure section 1030 authorizes a trial court to require an out-of-state plaintiff to post a bond if "there is a reasonable possibility that the moving defendant will obtain judgment." (Code Civ. Proc., § 1030, subds. (b)–(c).) Plaintiffs have cited no authority suggesting a defendant must pursue this avenue (or attempt to make the required showing) as a prerequisite to a later finding of inequity under the alter ego doctrine.[8] Similarly, the guaranty only applies if certain triggering events occur, and Cohen argues (here and apparently in the ongoing New York litigation as well) that they have not. The court correctly concluded there was no bar to applying the equitable alter ego doctrine. (See *Blizzard Energy, Inc. v. Schaefers* 71 Cal.App.5th 832, 848 [no adequate legal remedy shown where debtor filed for bankruptcy and opposed collection efforts].)

Cohen also suggests no inequity can be found here because defendants (either due to their own knowledge when they acquired the Loan, or because they stepped into the shoes of Bear Stearns) were aware of limitations on their ability to obtain a monetary recovery from plaintiffs or Cohen. Cohen argues defendants knew the plaintiff LLC's were special purpose entities whose only assets were the Property and related cash accounts; under section 9.3 of the Loan Agreement, "the Loan was 'non-recourse,' meaning

---

[8] The parties state defendants did file a motion under Code of Civil Procedure section 1030 after the trial court entered its initial judgment in 2013, but the court denied the motion, apparently on the ground it had to be filed before judgment.

[d]efendants could only look to those assets" (i.e., the loan collateral); and the guaranty imposed liability on Cohen only in certain circumstances.

In our *Rincon IV* opinion (filed after the completion of briefing in this appeal), we rejected one component of this argument—we held section 9.3 of the Loan Agreement does *not* bar defendants from recovering from plaintiffs (rather than just from the collateral) the attorney fees they incurred in defending against plaintiffs' lawsuit. (*Rincon IV, supra*, A155104, A155284.) Accordingly, the trial court's award of fees pursuant to section 10.13 of the Loan Agreement was proper. (*Ibid.*) More broadly, in the present appeal, we agree with the trial court that the contractual right to recover litigation expenses, including attorney fees, was part of the parties' reasonable expectations, and that defendants (while aware plaintiffs were LLC's) cannot be charged with knowing that the situation they now face would develop. The court explained: "What defendants did not know, or expect, was that when it came to litigation over the loan agreement they would be facing not the assets of the plaintiffs but those of Cohen and his other entities; and more particularly, that as a result they would be refused the benefit of the attorney's fees clause in the loan agreement." The court did not err in finding this to be an inequitable result and a proper basis to pierce the corporate veil.

Cohen's remaining arguments are unpersuasive. He asserts the trial court "misapplied" the "capitalization factor" in conducting its alter ego analysis and should have limited its inquiry to whether plaintiffs were adequately capitalized when they were formed. We agree with the trial court that an entity's ongoing capitalization may be relevant as well. (E.g., *Automotriz etc. de California v. Resnick* (1957) 47 Cal.2d 792, 797–798.) In any event, Cohen is incorrect that the court imposed a general requirement that LLC members must always recapitalize to account for potential losses in

16

litigation.  Instead, while stressing that undercapitalization on its own is not a decisive factor, the court concluded that, "under the specific facts of this case," including the pursuit of risky, expensive litigation using outside funds (rather than an alternative method, such as capital contributions to the LLC's), it would be inequitable to respect the corporate form.

Cohen also faults the trial court for describing Cohen's conduct—sponsoring litigation while remaining insulated from the consequence of paying defendants' attorney fees if the lawsuit failed—as a form of "opportunistic risk taking" that supported a finding of inequity.  We find no error.  Contrary to Cohen's suggestion, the court did not purport to change the applicable alter ego standard.  Instead, in addressing whether the unique facts of this case warranted disregarding the corporate form, the court analyzed the problem thoughtfully, considering the risks and costs associated with Cohen's conduct and whether they rose to the level of an inequity that should be addressed by the alter ego doctrine.  Neither the court's analysis nor its conclusion provides a basis for reversal.

### D. *The Inclusion of the Cost Award in the Judgment*

We add one note arising from the overlapping trial and appellate court proceedings in this matter.  As discussed, the corrected amended judgment entered on September 28, 2020, added Cohen as a judgment debtor, making him liable along with plaintiffs for the fees and costs previously awarded to defendants—$9,235,712.93 in fees and $332,704.30 in costs.  In June 2021, we affirmed the fee award but reversed the cost award and remanded for further proceedings as to costs.  (*Rincon IV*, *supra*, A155104, A155284.)  Our affirmance in this appeal of the trial court's decision to amend the judgment to add Cohen as a judgment debtor does not alter our prior reversal of the cost award that is included in the judgment.

17

## III. DISPOSITION

In No. A161541:

The September 2, 2020 order granting defendants' motion to add Cohen as a judgment debtor is affirmed.

In No. A161542:

The September 28, 2020 corrected amended judgment is affirmed to the extent that it now includes Cohen as a judgment debtor.  Our affirmance of the trial court's decision to make that change to the judgment does not alter our prior decision reversing and remanding for further proceedings as to the $332,704.30 cost award that is included in the judgment.

Defendants shall recover their costs in these appeals.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
DESAUTELS, J.*

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.